# CHARLESTON·

## MILLER *v.* HARE.

Submitted February 4, 1897—Decided November 10, 1897.

1. EQUITY PRACTICE—*Bill in Equity—Demurrer.*
    A general demurrer to a bill in equity is properly overruled, if the bill as a whole states facts which entitle the plaintiff to relief. (p. 657.)

2. ESTOPPEL—*Booms—Nuisance.*
    H., after acquiescing and even assisting M. in maintaining a boom for the catching and preserving of ties, timber, *etc.*, and receiving the benefits thereof in the saving of large numbers of his ties at an expense far less than it must have cost him if they had passed beyond the boom, can not, in a court of equity, be heard to say that the boom was constructed and maintained in violation of law, and was a public nuisance, interfering with steamboat navigation, and therefore that he should not be required to pay a just and reasonable compensation for the catching and preserving of his said ties in said boom. (p. 660.)

3. NUISANCES—*Booms—Damages.*
    If a boom is erected and maintained on a navigable stream in violation of law, and is therefore a public nuisance, an individual has no cause of complaint aside from that of the common public, unless he suffer a special and peculiar damage therefrom, distinct and apart from the common injury. (p. 660.)

Appeal from Circuit Court, Wood County.

Bill by D. M. Miller against John A. Hare. From a decree confirming the commissioner's report in plaintiff's favor, defendant appeals.

*Reversed in part, and decree entered.*

J. G. McCLUER, for appellant.

V. B. ARCHER, for appellee.

McWHORTER, JUDGE :

D. M. Miller filed in the clerk's office of the Circuit Court of Wood County, on the 24th day of June, 1893, his affidavit for an attachment against the estate of John A. Hare, on the ground of non-residence of the defendant, claiming that he was justly entitled to receive from the defendant in the suit which was about to be instituted in the said court the sum of eight hundred dollars, as set out in said affidavit; and at the same time filed his bond, with security, in the penalty of one thousand six hundred dollars, and caused orders of attachment to be issued from said clerk's office to the sheriffs of the counties of Wood and Wirt, respectively. The former was levied by the sheriff of Wood County, June 26, 1893, on one barge of ties, containing two thousand ties. The latter was on the same day levied by a constable of Wirt County on one boat load of ties. Defendant afterwards, on the 8th of July, gave bond and took possession of the property so levied upon.

At the July rules plaintiff filed his bill, alleging that he was the owner of a certain boom near the mouth of Hughes river, in Wirt County, W. Va., used for the purpose of catching timber and railroad ties which might be drifting in said river; that said river is one of the large tributaries of the Little Kanawha, and as such a part of the Little Kanawha river; that there was no boom in use for the catching of timber drifting in said Hughes river below the point where plaintiff's boom was located in said river, and no means, by boom or otherwise, below his boom for the preservation of logs, trees, railroad ties, *etc.;* that in the fall of 1892 and the spring of 1893 he caught in the said boom railroad ties which were drifting in said Hughes river belonging to the defendant, John A. Hare, to the number of nine thousand five hundred ties; that he preserved said ties in said boom, and notified the defendant, John A. Hare, that his ties had been caught, and demanded from him payment of the compensation prescribed by statute in relation to drift property, and that defendant wholly refused to pay plaintiff the amount which he was entitled to for catching and preserving them; that he is entitled to receive from the said Hare the sum of six cents for each and every tie caught and preserved by him; that the defendant had recently taken possession of his said

ties without plaintiff's consent, and proceeded to load the same in barges; and that, at the time of the institution of this suit, he was shipping the same to market, without paying plaintiff the amount due him for catching the same, and without settling with plaintiff, although he had often been requested so to do; and alleging the non-residence of the defendant, and that he had no property within the knowledge of the plaintiff save and except the property attached in this case, unless it was some cross-ties which are still on the waters of the Little Kanawha, but of the quantity or location thereof plaintiff was not advised and could not charge. Further alleging that the said ties were branded by the brand belonging to the said John A. Hare, —that is, the letters "J. H."; that, had it not been for his catching said ties, the same would have drifted out into the Little Kanawha, and ultimately into the Ohio river, and would have been lost or scattered along said river, by which defendant would have been damaged to a much greater extent than the value fixed by the statute for catching and preserving the ties; that he had preserved said ties in his boom at his own cost and expense; that the said ties filled plaintiff's boom, and, by reason of the plaintiff's preserving the ties of defendant, he was totally unable to take care of his own ties, which were too numerous to preserve after said boom was filled with the ties of said defendant, and plaintiff was put to great cost and expense in securing his own ties, which drifted out into the Little Kanawha and Ohio rivers, which would not have been the case had plaintiff not caught and preserved the ties of said defendant,—all of which the said defendant well knew at the time he took possession of the ties from plaintiff's boom, and refused to pay plaintiff the compensation fixed by statute; that he filed an affidavit, and caused an order of attachment to be issued from the clerk's office of the said court of Wood County, and by virtue of said attachment the sheriff of Wood County had levied upon and attached a barge of ties, containing about two thousand, as the property of said Hare, which was then in possession of the sheriff; and that a copy of said order of attachment was also sent to the sheriff or any constable of Wirt County, which was levied also upon a lot of ties in Wirt County, and the same were in the possession of

the officer levying it; and he filed as exhibits the affidavit and order for the attachment. And further charging that the defendant was indebted to him in the sum of two hundred and thirty dollars for a lot of rope which plaintiff furnished to said defendant to be used by him in securing the timber, ties and logs, in Hughes river, one coil of which rope said defendant used, and one coil was delivered by plaintiff at the barn of Col. Enoch, near Greenville, and defendant notified that said rope was there subject to his orders upon payment of the costs thereof, and that said defendant had failed to pay for said rope, and that the plaintiff was justly entitled to recover the value thereof; and charging that he was justly entitled to recover from the defendant, for catching and securing the railroad ties, the sum of five hundred and seventy. dollars, and for the rope furnished to the said defendant the sum of two hundred and thirty dollars, making in all the sum of eight hundred dollars; that he was remediless in the premises, save in a court of equity, where matters of the kind are properly cognizable; and prayed that he might have a decree against the defendant for the sum of eight hundred dollars, and for the sale of said cross-ties attached in the counties of Wood and Wirt, and out of the proceeds that the costs might be paid, and expenses of levying upon and attaching said cross-ties, and preserving the same in the hands of the sheriff, and for the payment of his claim and interest, and for general relief.

Defendant filed a general demurrer to the bill, and, without waiving his demurrer, filed his answer, denying that the Hughes river is any part of the Little Kanawha river, and averring that it is a separate and distinct river, and so recognized in the history and geographical surveys and delineations on the maps of the State of West Virginia, *etc.* ; and admitting the truth of the allegation that in the fall of 1892 and spring of 1893 there was no boom in use for the catching of timber drifting in said Hughes river below the point where the plaintiff retained the respondent's railroad ties in said Hughes river; and charging that no boom could be maintained in said Hughes river during the years 1892 and 1893, at any point in said Hughes river, or in said Little Kanawha river, because the same was not allowed by the laws of the State of West Virginia; and

denying that the plaintiff was or could be the owner of any boom near the mouth of Hughes river, in Wirt County, W. Va., for catching timber and railroad ties which might be drifting in said Hughes river; and denying that plaintiff caught in any boom any railroad cross-ties belonging to respondent, and drifting in said Hughes river, near the mouth of the Little Kanawha or elsewhere; and denying that the plaintiff had any right to catch, in any boom in said Hughes river, any cross-ties or timber or property, belonging to respondent, drifting in said Hughes river, at any point, in any boom; and denying that plaintiff was entitled to receive from him anything for illegally obstructing the floating and passage of any of his railroad cross-ties or timber down said Hughes river; and especially denying that the plaintiff was entitled to receive or recover from respondent six cents for each and every tie caught and preserved by him in any such boom that may have been so attempted to have been maintained by plaintiff in Hughes river illegally; and charging that plaintiff did not preserve respondent's ties, but threw the same out of the boom when found by the plaintiff; and denying that he was indebted to the plaintiff in any such sum as two hundred and thirty dollars for rope furnished to respondent by plaintiff, but that it is true that respondent did receive and use one coil of rope, worth, including freight seventy-seven dollars; and denying that there was any coil "delivered by plaintiff at the barn of Col. Enoch, near Greenville," or, at least, if it was placed there, it was not delivered to respondent; and denying that respondent was notified that said rope was there subject to his order, upon payment of the costs thereof, and denying any liability to pay for any rope so delivered at Col. Enoch's, or that plaintiff was entitled to recover anything on account of same against him; alleging that, in the spring of 1893, respondent and Miller were running and drifting cross-ties in said Hughes river, and plaintiff proposed to respondent that he (plaintiff) would get a lot of rope, and put some rafts across the Little Kanawha below the mouth of Hughes river, to catch plaintiff's and respondent's property jointly, as it should come out of Hughes river; that at the time said river had been lately frozen over, and the ice had broken up, and the object was to hold the ice and the stuff that was in it; that,

in addition to plaintiff and respondent, the Parkersburg
Mill Company and William Richardson, all of whom had
property, or were interested in property, that floated in
said Hughes river, or bound up in said ice, were to bear
their share of the expense of putting in three rafts; that
to such proposition respondent acceded, but that plaintiff
failed to and did not put in such rafts, and did not stop
any such property of respondent, and then afterwards set
up claim that respondent should pay for the coil of rope
which plaintiff had gotten, but not used, but respondent
had nothing to do with getting such rope, and denied that
he was in any way liable to pay anything therefor; and
averring that, by reason of the failure of the plaintiff to
place and secure such rafts across said Little Kanawha
river, respondent lost railroad ties that floated out with
the ice into the Little Kanawha and Ohio rivers to a large
amount, at least the sum of five thousand dollars, which
sum of five thousand dollars respondent had a right to and
claims, and also seeks and asks to recoup and have set off
against the plaintiff's claim set up in said bill for said rope
as well as for catching said cross-ties; and averring that the
seventy-seven dollars had been settled and adjusted and by
accord satisfied prior to the institution of this suit; denying
that plaintiff was justly entitled to recover from defendant
for catching and securing said railroad ties the sum of five
hundred and seventy dollars, and for the rope furnished the
sum of two hundred and thirty dollars, making in all the
sum eight hundred dollars, as charged in said bill, or that
he was indebted to the plaintiff in any sum whatever, but
charging that, upon a just and fair settlement, plaintiff was
indebted to respondent, because that about the 29th of
April, 1893, respondent caught twenty-five hundred railroad
crossties drifting in Hughes river belonging to plaintiff, and
secured same, and cared for and preserved them, and de-
livered them to plaintiff, for which respondent was entitled
to recover a fair and reasonable compensation, as provided
by law; that he preserved and cared for same from about
April 29 to about July 1, 1893, and that a reasonable com-
pensation therefore should be fixed and ascertained by the
court; and further charging that, during the fall of 1892
and spring of 1893, the plaintiff undertook to establish a
boom in said Hughes river, as he calls it, and went on and

placed obstructions in said river, and kept the same there during the fall of 1892, and up to the time of the bringing of this suit and the filing of the answer; that said Hughes river, at the point where the plaintiff was attempting to maintain said boom and obstruction, was and is a navigable river and stream, and was and is used a great deal then and now by the citizens of West Virginia, and people and public doing timber business thereon, for the transportation, floating, driving, drifting of timber, cross-ties, *etc.*, along and upon the waters of said Hughes river, as they had a right then and now to do without hindrance; that at the point where said boom was so established, and for at least a distance of about a mile above that in said Hughes river, the said river is and was then navigable for steamboats and other crafts, rafts, *etc.*, at all times when said Little Kanawha is and was navigable for such crafts, rafts, boats, *etc.*, and at all times except during ordinary low water; that said obstruction so called a "boom" by said plaintiff, was then and is now without any legal authority or right whatsoever, and is in violation of law and the rights of this respondent, and of the citizens of the United States, of the public in general, and especially of the citizens of the State of West Virginia, and then and now constituted a nuisance under the law; and said boom was by plaintiff so constructed that there was no provision for timber, cross-ties, or property of respondent or anybody else to pass through or beyond said obstruction or boom so placed there by plaintiff, and in consequence it detained the cross-ties and property of this respondent to a large amount; that respondent, through his agents and employes, went and took possession of his cross-ties so wrongfully detained by plaintiff, and loaded them into barges, and about the month of June, and just prior to the institution of this suit, moved the barges into which respondent's said cross-ties were so loaded; that plaintiff took out an attachment against respondent before H. J. Fought, justice of the peace of Wirt County, claiming and swearing that he was entitled to recover from respondent three hundred dollars, but, before the same could be tried, plaintiff dismissed that action, and then brought this suit, and swore he was entitled to recover eight hundred dollars, and denying the plaintiff's right to recover anything, or his right to issue

any writ of attachment; that respondent has given bond and taken possession of his property, and is entitled to recover from the plaintiff a reasonable compensation for catching, securing, preserving, and delivering to plaintiff said twenty-five hundred ties, and to decree, therefor, together with his costs in this suit, and praying for affirmative and for general relief; to which answer plaintiff replied generally.

On the 29th of August, 1895, the cause was heard upon process executed, affidavit and attachment issued and levied, upon the bill filed, and proceedings had at rules, the demurrer and answer of defendant, general replication to the answer, the issue on demurrer, and the depositions of all the witnesses, taken both for plaintiff and defendant; whereupon the court overruled the demurrer, and found that the plaintiff was entitled to a reasonable compensation for catching and preserving defendant's ties, and sustained the attachment issued in the cause, but held that, before a final decree could be executed in the cause, it should be referred to one of the commissioners of the court to take, state, and report an account between the plaintiff and defendant. The cause was accordingly referred to W. W. Jackson, commissioner, with directions, after first giving reasonable notice to the parties, to make, state, and report an account between plaintiff and defendant, as follows: "First, as to the amount the defendant is indebted to the plaintiff on account of the lines or ropes mentioned in the bill, alleged to have been purchased by the plaintiff for the use of the defendant, the plaintiff and the Parkersburg Mill Company, if any, the costs of said ropes, and the amount to be charged to the defendant; second, the number of railroad ties, belonging to the defendant, collected in plaintiff's boom and received by the defendant, and what would be a just compensation for catching and preserving said railroad ties, and the amount to which the plaintiff would be entitled for such service; third, the amount of payments or offsets to which the defendant may be entitled, under the pleadings in this cause, if any."

On the 19th of November, 1895, Commissioner Jackson filed his report in the cause, in substance as follows: "Your commissioner reports that the evidence submitted to him by plaintiff and defendant was very conflicting, and that a

large amount of such evidence was irrelevant, and totally foreign to the matters under consideration. Your commissioner reports that no evidence was produced before him except the depositions already filed in the case." In response to the first inquiry, he says: "Your commissioner finds that the defendant is indebted to the plaintiff on account of the lines or ropes mentioned in the bill, alleged to have been purchased by the plaintiff for the use of the defendant, in the sum of $230. Your commissioner has been unable to report exactly the cost of the ropes purchased for the use of the defendant, the plaintiff and the Parkersburg Mill Company, but, on the testimony of S. L. Gould, fixes the cost price of said ropes at $797.80. Of this rope the mill company took two-fifths, leaving the remaining three-fifths to be divided equally, as ascertained by the commissioner, between the plaintiff and the defendant, both plaintiff and defendant being liable for the payment of one-half of said three-fifths part set aside to them. While this would exceed the amount claimed in the plaintiff's bill, owing to the uncertainty of the evidence, your commissioner has taken the amount as set out in the plaintiff's bill, and fixed the liability of the defendant to the plaintiff on account of said ropes as $230." And to the second inquiry: "As to the number of railroad ties belonging to the defendant collected in plaintiff's boom and received by the defendant, the testimony is extremely conflicting, and the witnesses, all with the exception of the defendant, give estimates in guesses as to the amount, no person seeming to have actually counted the number of ties so collected. The defendant testifies that there were 6,700 ties in the boom, and that prior to that rise he had loaded 3,000 ties out of Miller's boom, making 9,700 in all. Your commissioner finds that the amount of ties claimed in the plaintiff's bill to have been caught for the defendant was 9,500. Your commissioner, therefore, fixes the number of ties collected in the plaintiff's boom, and received by the defendant, at 9,500. Upon the question of a just compensation for catching and preserving said railroad ties, and the amount to which the plaintiff would be entitled for such services, your commissioner reports that the evidence varies from one-half a cent to six cents a tie, but that the amount of six cents per tie seems, from the evidence, to

have been paid almost if not exclusively upon the Little Kanawha river, the evidence showing that the amount paid upon the Hughes river, when caught in booms, ranged from one-half a cent to three cents. Your commissioner, after carefully considering the evidence, has reached the conclusion that a just compensation for catching and preserving said railroad ties would be two and a half cents for each tie, making a total of $237 due from the defendant to the plaintiff on account of catching and preserving said railroad ties." And to the third inquiry, he says : "Under this head your commissioner reports that, after a careful consideration of the evidence, he is of the opinion that the defendant is entitled to no set-off or payment against the plaintiff's claim." "Your commissioner further reports that there is due as ascertained by him, from the defendant, John A. Hare, to the plaintiff, D. M. Miller, on account of rope, $230; on account of compensation for catching and preserving ties, $237.50,—making a total of $467.50 due from the defendant to the plaintiff."

The defendant, John A. Hare, excepted to the report : "First, because the same is not supported by the evidence before the commissioner and before the court; second, because said report is contrary to the evidence in the cause before said commissioner ; third, because the commissioner has erred in allowing the plaintiff, D. M. Miller, $230 for rope, when the evidence shows that no rope was ever delivered to the defendant, nor was any ever delivered at any place agreed upon between the plaintiff and defendant for delivery; fourth, because the commissioner erred in allowing the plaintiff two and a half cents (2½) per tie as just compensation for catching and preserving railroad ties in controversy, making a total of $270.50 due from the defendant to the plaintiff on account of catching and preserving such railroad ties, and because plaintiff is not entitled to recover anything, as set up in the answer filed in this cause, and said finding is contrary to the weight of evidence; and, fifth, because of errors and insufficiencies appearing upon the face of said report."

And on the 2d of December, 1895, the cause was heard upon the papers formerly read, and the orders made therein, upon the order of reference and report of Commissioner Jackson made thereunder, and the exceptions

taken by defendant to said report, and the exceptions set down for argument, and was argued by counsel; whereupon the court overruled the several exceptions of the said defendant to said report, and confirmed the report of Commissioner Jackson, and decreed that plaintiff recover from defendant, John A. Hare, four hundred and seventy-two dollars and twenty-seven cents, the amount ascertained by the commissioner to be due from defendant to plaintiff, with interest from September 13, 1895, until paid, and the costs of suit, from which decree this appeal is taken.

The first assignment of error is the overruling of the demurrer to plaintiff's bill. The demurrer filed is a general demurrer to the whole bill, and sets out no grounds other than that "the same is not sufficient in law." The bill alleges indebtedness of the defendant to the plaintiff in the sum of two hundred and thirty dollars for rope sold by plaintiff to defendant and furnished to him, and also in the sum of five hundred and seventy dollars for catching and preserving certain ties of and for the defendant. In his brief the counsel for defendant argues that the demurrer should have been sustained by reason of the plain and willful violation of the statute law of the State of West Virginia in maintaining a boom on a navigable stream by the plaintiff, where no such boom was permitted under the law, in which boom defendant's ties were unlawfully caught, and for which plaintiff has charged defendant, and seeks to recover from him such charges in this suit. The reasons assigned for sustaining the demurrer do not apply to the whole bill. The demurrer is too extensive, and was properly overruled.

Second, that the court erred in overruling the exceptions to the report of Commissioner W. W. Jackson in the cause, certified as of September 28, 1895, because the same is not supported by the evidence before the commissioner and before the court, and for other reasons set forth in the exceptions to said report filed by John A. Hare, by his attorney, L. N. Tavener. A careful examination of the evidence shows that the third exception to Commissioner Jackson's report is well taken, as to the allowance to plaintiff, Miller, of two hundred and thirty dollars for rope. This allowance should have been seventy-seven dollars, and not two hundred and thirty dollars. Defend-

ant admits getting the half coil of rope at seventy-seven dollars, and the fact is proven also by other witnesses. It is true, it is shown by the testimony of B. S. Pope that the seventy-seven dollars was credited to plaintiff, Miller, in his account with Pope & Sons, and charged to defendant, Hare; but it is also shown by the testimony of B. S. Pope that it was again credited back to Hare, and charged back to Miller, so that Hare has never paid it. The evidence fails to prove that defendant, Hare, ever purchased, or contracted to purchase or received, or agreed to receive, any more of the rope than the half coil, for which he says himself he should pay to Miller seventy-seven dollars. There was considerable testimony taken concerning the purchase of the rope, and of interviews between plaintiff, Miller, and Hare, and between Miller and Pope, and representatives of the Parkersburg Mill Company, about its purchase. Miller says he and Hare were consulting about the matter of getting the line to hold the gorge, ice, timber, and ties, and save the stuff, when Hare said, "Let's go up and see Pope, and see what he thinks of it, and, if he is in favor of it, we will do so;" that they went to Pope's office, in the city of Parkersburg, "and there consulted about the matter between us three, and the agreement was made there to order ten coils—half coils—of two-inch line, and take them there, and if it was a favorable thaw, and we thought it could be held by erecting a boom below it, and putting them out, why we were to do it, each one paying for one-third of the line,—the Parkersburg Mill Co., one-third; myself, one-third; and John A. Hare, one-third." Hare in his testimony says emphatically there was no such contract, and he is corroborated by the testimony of Pope, who was the third party present when the contract was alleged to have been made.

Third assignment: "The court erred in confirming the said commissioner's report, and decreeing against the appellant, John A. Hare, the sum of $472.27, with interest and costs of suit." This is correct to the extent of the difference between two hundred and thirty dollars allowed in the report for rope, and seventy-seven dollars, the amount which should have been allowed.

Fourth assignment: "The court erred in not dismissing the plaintiff's bill after the proofs were in, showing that

the plaintiff, D. M. Miller, had in his own wrong erected a boom across Hughes river, which was a navigable stream, and then being navigated by steamboats plying the waters of the Little Kanawha river; thereby not only obstructing navigation, but preventing, by his wrongful and illegal act, the ties and timber of the appellant from passing out of said stream into the Little Kanawha river, and at the same time obstructing and hindering navigation of said river, and preventing its free use by the public." A careful review of all the testimony shows that plaintiff, Miller, maintained a boom in Hughes river from one hundred to two hundred yards from its mouth, and that defendant, Hare, had a boom about a mile to a mile and a half above Miller's, on the same river. These booms were both constructed and maintained for the purpose of catching ties, timber, *etc.*, to keep it from passing out into the Little Kanawha river, and thence into the Ohio; that there was no boom below that of plaintiff, Miller, to prevent free passage of any ties, timber, *etc.*, which passed his boom, into the Little Kanawha river; that ties, *etc.*, passing into the Little Kanawha, were liable to be lost entirely to the owners, and, if caught on the Little Kanawha or Ohio river, the expense of recovering the same was much greater than if caught in the said booms.

Defendant, Hare, in his testimony, says that "in January, 1893, the river broke up, and the ice destroyed Mr. Miller's shear boom, and a portion of my side boom, and I took my shear boom and what side boom I had and coupled it onto his [Miller's], and we used the boom jointly for a short time for catching our ties"; that Mr. Miller rebuilt his shear boom, and witness Hare then moved his back to the place where he formerly had it; as he expressed it; "that is, what I had left of it," "about a mile, or a mile and a half, or something like that, above Mr. Miller's." The "wild rise," as witness Hare designated it, came in April, 1893, when plaintiff caught most of the ties of defendant, Hare, for which he has charged him in this suit. From Hare's testimony it appears that several thousand ties on this rise passed out into the Little Kanawha river, and Hare himself says that his recollection is that it cost eleven cents per tie to have such ties gathered up and delivered in boat. Several witnesses were exam-

ined as to the cost and proper amount to be paid for
catching the ties, and it ranges all the way from one-half
cent per tie to six cents. William Richardson testifies very
intelligently, and from large experience in the business,
and he fixes a reasonable compensation at three cents per
tie for catching and preserving defendant's ties as was
done by plaintiff. So I conclude that the amount arrived
at by the commissioner, to-wit, two and one-half cents per
tie, was not unreasonable. And Hare admits that plain-
tiff caught and saved to him about nine thousand seven
hundred ties. The evidence further shows that the catch-
ing of plaintiff's ties by defendant in his boom above
plaintiff's boom was of no advantage to plaintiff, but a
disadvantage, and that defendant, as well as his agents
and employes, was notified by plaintiff not to catch his
ties. After acquiescing, and even assisting, as defendant
did, in the maintenance of plaintiff's boom, and receiving
the benefits thereof in the saving of large numbers of his
ties, at an expense far less than it must have cost to save
them if they had been permitted to pass out of Hughes
river into the Little Kanawha, he cannot, in a court of
equity, be heard to say that the boom was constructed and
maintained in violation of law, and that the same was
a public nuisance, interfering with steamboat navigation,
and therefore he should not be required to pay a just and
reasonable compensation for a valuable service rendered
him. It is shown by the evidence that the boom of plain-
tiff was not a private nuisance, but of great value and
benefit to individuals, engaged in driving and running
ties, timber, *etc.*, in Hughes river, and that it was specialy
so to defendant, Hare. In *Page* v. *Lumber Co.*, 53 Minn.
499. (55 N. W. 608, 1119), cited by appellant, the court says
"that a nuisance, such as an unreasonable or wanton des-
truction of a navigable stream, or a public highway, may
be public in its general effect upon the public, and at the
same time private as to those individuals who suffer a
special and particular damage therefrom distinct and
apart from the common injury. * * * The public
wrong inflicted upon all persons must be redressed by a
public prosecution." If appellee's boom was erected and
maintained, as claimed by appellant, in violation of law,
and was therefore a public nuisance, the way to get rid of

it was by a public prosecution, and appellant, Hare, had no cause of complaint as an individual, aside from that of the common public, unless he "suffered a special and peculiar damage therefrom distinct and apart from the common injury." *Aldrich* v. *Wetmore*, 52 Minn. 164, (53 N. W. 1072); *Williams' Case*, 5 Coke, 72a; *Brakken* v. *Railway Co.*, 29 Minn. 41, (11 N. W. 124). Not only is this not appellant's case, but it is shown that the boom was of peculiar benefit to him, not only saving him large expense, but from considerable probable loss. The appellant's ties were drifting on the Hughes river, and were secured by appellee, and taken from his possession by appellant without having paid the just compensation for catching and preserving the same, as provided in section 7, chapter 61, Code, to the person taking them up. Appellee is entitled to recover the same in this suit.

The decree is affirmed as to the amount allowed for catching and preserving the ties, and is reversed as to amount found for rope, which should be seventy-seven dollars; and, this Court proceeding to render such decree as the circuit court should have rendered, it is adjudged, ordered and decreed that plaintiff recover against the defendant the sum of three hundred and seventeen dollars and thirty cents, with legal interest thereon from December 2, 1895, until paid, and his costs by him expended about his suit in the circuit court, including fifteen dollars as allowed by law, and that he have execution therefor.

*Reversed in part and decree entered.*