# CHARLESTON

## TROUGH *v.* TROUGH.

Submitted February 7, 1906.   Decided April 17, 1906.

1. DIVORCE—*Bill—Demurrer.*

    A bill for divorce has two grounds or matters for relief. It charges adultery calling for absolute divorce, and desertion calling for decree of separation. The bill does not name a *particeps* in the adultery, or give time, place and circumstance. If the bill be bad therefor, a demurrer, being general, is properly overruled. (p. 465.)

2. SAME—*Enforcement of Payment of Alimony—Striking Out Depositions.*

   A court has no power to strike out and disregard depositions filed by a defendant in defence of a suit for divorce, for failure to pay money required of him to enable his wife to prosecute her suit and for temporary alimony, and pass final decree of divorce against him. Such decree is not due process of law. (p. 466.)

3. SAME—*Confessions—Admissibility.*

   Confessions of adultery made in the country cannot be given in evidence or considered in a suit for divorce for such offense. (p. 473.)

Appeal from Circuit Court, Braxton County.

Bill by Virginia B. Trough against Richard L. Trough. Decree for plaintiff, and defendant appeals.

*Reversed.*

HALL BROS., for appellant.

HINES & KELLY, for appellee.

BRANNON, JUDGE:

This is a suit by Virginia B. Trough *versus* Richard L. Trough for a divorce. The bill contains a charge of adultery and also desertion, though the desertion is not for a period to call for an absolute divorce from the bond of matrimony. The special prayer of the bill is for absolute divorce, which was granted, and the defendant appealed.

Demurrer. There is much argumentation upon a demurrer to the bill, based on the claim that the bill does not name the woman with whom the defendant committed adultery, nor does it give time, place and circumstance, and thus wants legal certainty. We do not say whether or no a bill for divorce for this offence should contain the name of the *particeps criminis* or other matter of alleged defect of the bill, because the demurrer is general, and there are two grounds of divorce contained in the bill, one calling for full divorce, *a vinculo matrimonii*, the other a partial divorce, divorce of separation, *a mensa et thoro*. The demurrer does not separate these two causes of suit. It does not aim at the charges of adultery, and being general, it was properly overruled. We again say that where a bill contains two or more matters of suit, one good, one bad, the demurrer must be separate. This has always been law. *Miller* v. *Hare*, 43 W. Va. 647;

*Gay* v. *Skeen*, 36 *Id.* 582. The bill contains a prayer for divorce absolute and for general relief, and a divorce of mere separation could be granted under the latter prayer. *Vance Shoe Co.* v. *Haught*, 41 W. Va. 276. Therefore, the demurrer was properly disregarded. Here a question arose in my mind. The decree being for absolute divorce for adultery, based thus on that part of the bill said to be defective, can that decree be sustained? Whilst proper to overrule the demurrer, because some relief may be granted, would a decree standing on the bad part of the bill be good on appeal, in view of the rule put in several cases, that where a bill contains some matter proper for relief, and some not good for relief, a general demurrer is not good, and should be overruled, as it should be aimed especially at the bad matter; but where the court gives relief justifiable only on the bad matter, it is reversible error? *Turner* v. *Stuart*, 51 W. Va. 493. But that says bad "matter," meaning the very substance of the facts on which the bill predicates the relief sought, bad matter not calling for any relief by law, not mere defective statement of matter which does call for relief. In this case the bill charges adultery, the alleged defect being in not naming a *particeps* and giving time, place and circumstance —a mere defect of specification. That takes the case out of the rule just referred to. We find no error in disregarding the demurrer. It was not acted on expressly, likely owing to inadvertence; but we must regard it as overruled.

An order was made requiring the defendant to pay $50 for counsel fees and $15 per month for support of the plaintiff and two children, and he failing to pay the court decreed that "'none of the depositions taken by defendant be read or considered on the hearing of this case,'" and granted a decree of absolute divorce, giving the plaintiff custody of the three children, commanding defendant to surrender to the plaintiff the custody and control of a daughter who was with her father, enjoining forever the defendant from interfering with the plaintiff in the care, custody and control of the children, decreeing that the plaintiff hold a tract of land and personal property consisting of household goods, cows, hogs, chickens and other property claimed by the plaintiff in her bill, and decreeing costs against defendant. The defendant filed an answer denying all the allegations of the charges involved

in the divorce, claiming the land and personal property. The defendant took numerous depositions. Had the court power to thus refuse the defendant the right of defence? For refusal of defence it was, since what avail the answer without proof under it? The case involved the dearest rights of the defendant, wife, marriage rights, children, property, personal character—rights of person and property. What had the payment of this money as temporary alimony to do with the merits of the controversy touching those all important and inestimable rights? Nothing. This action of the court is based on the idea that the defendant in failing to obey the order for payment was in contempt, and that courts have power to punish contempt, and to enforce their orders, necessarily so, and that they can refuse to allow a plaintiff to prosecute a suit for such disobedience, or refuse a party attacked to defend. There is authority for this proposition. 14 Cyc. 795, says that refusal of defence is rarely resorted to, but may be. 1 Ency. Pl. & Prac. 436, says a method to enforce payment "frequently resorted to" is dismissing the plaintiff's bill, or refusing to proceed with the trial, or striking the answer of the defendant from the files and proceeding with the case *ex parte*. These statements are guarded and hesitating. The reason of the matter, the weight of authority, are decidedly against the power to refuse one a defence when attacked. The late work, Nelson on Divorce, in section 861, says: "An order for temporary alimony may be enforced by execution, sequestration, or by proceedings in contempt. But during the suit the court has the power to enforce its orders by declaring the husband in contempt and refusing to proceed with the cause until its order is complied with. In some instances the courts have dismissed his petition for a failure to comply with its orders. It is error to refuse a matter of right, such as a change of venue, until the temporary alimony is paid. It is doubtful if the court should refuse to enter a decree of divorce until the temporary alimony is paid. But in some instances this practice has been approved. In many instances the husband's answer has been stricken out for his disobedience of the orders of the court. But this is now considered against public policy; for it prevents that full investigation into the merits of the controversy which is necessary to protect the interest of the state."

The last expression of Nelson is borne out by *Wass* v *Wass*, 41 W. Va. 126, holding that the state is an implied party to divorce suits and the court must take care that divorces are not granted contrary to law and without good ·cause. Bishop on Mar., Divorce and Sep., section 1095, says: ''Taking away privileges in the cause is sometimes employed for enforcing payment. For example, in justifying circumstances, the court may strike out the defendant's answer, or dismiss the plaintiff's complaint, or refuse to proceed with the trial, unless or until its alimony order is obeyed. Possibly some of the cases under these heads have gone too far. The interests of the public, while not prejudiced by what delays the cause or ends it without a trial, will not permit a hearing with the channels of evidence obstructed. Therefore public policy forbids that a husband's refusal to pay temporary alimony should deprive him of the right to defend the suit.'' This is so because all law says that public policy looks with aversion on divorces. This principle that the public interest is involved so far that it is deemed a *quasi* party, is fully supported by a note in 30 Am. Dec. 545, and Bishop on Marriage, Divorce and Separation, section 480. Now, you suppress a defence to a divorce suit, and dissolve a marriage on the application of one party, and refuse a defence, and you overturn this public policy. No more effective process to further this result can be conceived. For myself, though not involved in the case, I question the right to dismiss a plaintiff's suit for such contempt, under the nature and structure of our government in America, and especially under our Bill of Rights in our Constitution, Art. 3, section 17, ''The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay.'' And does not this accord the right to̠defend when attacked ''in person property or reputation?'' But let us, on this grave question, look at further authority. In *Hovey* v. *Elliot*, 167 U. S. 409, is a long, learned opinion for a unanimous court reviewing the law under English and American cases for more than a century touching the power of courts to punish contempt of a party in failing to pay money under an order of court, arriving at the conclusion that a court cannot for this cause strike out

an answer and take the bill for confessed; that it has not the power to summon a party to defend, and having obtained jurisdiction over him "refuse to allow the party to answer or strike his answer from the files, *suppress the testimony* in his favor, and condemn him without consideration thereof and without a hearing, on the theory that he has been guilty of contempt." The court held the decree void. In *Windsor* v. *McVeigh*, 93 U. S. 274, where an answer had been stricken out to a libel of confiscation because the owner of the property was a Confederate, the court said, referring to *McVeigh* v. *U. S.*, 11 Wall. 259, referring to an order striking out an answer said: " 'The order in effect denied the respondent a hearing. It is alleged he was in the position of an alien enemy, and could have no *locus standi* in that form. If assailed there, he could defend there. · The liability and right are inseparable. A different result would be a blot upon our jurisprudence and civilization. We cannot hesitate or doubt on the subject. It would be contrary to the first principles of the social compact and of the right administration of justice.' · The principle stated in this terse language lies at the foundation of all well-ordered systems of jurisprudence. Wherever one is assailed in his person or his property, there he may defend, for the liability and the right are inseparable. This is a principle of natural justice, recognized as such by the common intelligence and conscience of all nations. A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.

That there must be notice to a party of some kind, actual or constructive, to a valid judgment affecting his rights, is admitted. Until notice is given, the court has no jurisdiction in any case to proceed to judgment, whatever its authority may be, by the law of its organization, over the subject-matter. But notice is only for the purpose of affording the party an opportunity of being heard upon the claim or the charges made; it is a summons to him to appear and speak, if he has any thing to say, why the judgment sought should not be rendered. A denial to a party of the benefit of a notice would be in effect to deny that he is entitled to notice at all, and the sham and deceptive proceeding had better be

omitted altogether. It would be like saying to a party, Appear, and you shall be heard; and, when he has appeared, saying, Your appearance shall not be recognized, and you shall not be heard. In the present case, the District Court not only in effect said this, but immediately added a decree of condemnation, reciting that the default of all persons had been duly entered. It is difficult to speak of a decree thus rendered with moderation; it was in fact a mere arbitrary edict, clothed in the form of a judicial sentence.

The law is, and always has been, that wherever notice or citation is required, the party cited has the right to appear and be heard; and when the latter is denied, the former is ineffectual for any purpose. The denial to a party in such a case of the right to appear is in legal effect the recall of the citation to him." In *Underwood* v. *McVeigh*, 23 Grat. 409, of a decree given after an answer was stricken out, the court said: "It lies at the very foundation of justice, that every person who is to be affected by an adjudication should have the opportunity of being heard in defence, both in repelling the allegation of fact, and upon the matter of law; and no sentence of any court is entitled to the least respect in any other court, or elsewhere, when it has been pronounced *ex parte* and without the opportunity of defence. An examination of both sides of the question, and deliberation between the claims and allegations of the contending parties, have been deemed essentially necessary to the proper administration of justice by all nations, and in every stage of social existence." In the four cases just cited the decrees were held void as not judicial sentences. The party had no day in court. It is not due process of law under state and federal constitutions. It is condemnation without notice. The party's case has been put out of court. No matter the character of his defence, no matter that he be in contempt, lasting final decree against him, involving in this case his most important rights in life, cannot be entered. It is void for want of due process. It violates that definition of due process of law given by Daniel Webster approved without dissent everywhere. "By the law of the land is most clearly intended the general law, which hears before it condemns; which proceeds upon inquiry and renders judgment only after trial." Such action denies equal protection of the law. The law im-

poses no such heavy penalty for contempt. The right of defence is given to one man and denied to another for no cause involved in the merits.    If there is any plain right as to judicial procedure I assert that it is a right to defend where attacked in person, character or property.    We recognize in both opinions in *Hebb* v. *County Court* that whilst a court might refuse affirmative action, action in favor of one in contempt, it could not deny one attacked right to defend. 48 W. Va. 279; 49 *Id*. 733.    This distinction between plaintiff and defendant will be found in the opinion in *Hovey* v. *Elliot*, *supra*. To support the particular position that a defence cannot be denied to one failing to pay temporary alimony because in contempt I cite *Foley* v. *Foley*, 65 Am. St. R. 147, holding that an answer cannot be stricken out, but the contempt may be punished otherwise; *Gordon* v. *Gordon*, 33 Am. St. R. 294; *Johnson* v. *Superior Court*, holding that one in such contempt cannot be denied process for witnesses; *Bailey* v. *Bailey*, 28 N. W. 443, holding that it would be against public policy to deny a defence for such contempt; *Carson* v. *Carson*, 15 Ga. 405; *McMakin* v. *McMakin*, 68 Mo. App. 57, holding that contempt "does not authorize the striking of answer or refusal to admit evidence for him." *Allen* v. *Allen*, 72 Iowa 502, where the court said, "It will not do to hold that the marriage relation may be dissolved on the ground of defendant's inability to pay a sum for alimony, *or because of* his recusancy." *Dwelly* v. *Dwelly*, 46 Me. 377; *Newhouse* v. *Newhouse*, 14 Ore. 290.    Century Digest, vol. 17, section 738, will show few cases to sustain such action. Outside New York scarcely any.    Its leading case, *Walker* v. *Walker*, 82 N. Y. 260, seems hesitating, and rests on the old arbitrary practice of English Chancery.    But it is not sound English law as the Supreme Court holds in *Hovly* v. *Elliot*, 167 U.S. 409, and as shown in *Gordon* v. *Gordon*, 141 Ill. 163, (33 Am. St. R. 294), citing *Haldine* v. *Eckford*, L. R. 7, 425, where the English court said: "Though the contempt of the defendants had been of the most flagrant kind, yet as what they asked was for the purpose of defending themselves, he had no jurisdiction to refuse the order." Other English cases are there cited. The Illinois court says the New York case is not looked upon with favor or followed.    Some cases cited to the reverse do not support that reverse.    *Casteel* v. *Casteel*, 38.

Ark, 477, holds that the *plaintiff's* suit may be dismissed for refusal to pay wife's counsel fees. *Winter* v. *Superior Court*, 11 Pac. 633, did not refuse defence, but refused to hear the case on the contemnor's motion, refused a *favor* asked by him. *Waters* v. *Waters*, 49 Mo. 385, only holds that a *plaintiff's* suit may be dismissed for failure to pay a wife money to carry on her defence. *Clark* v. *Clark*, 117 N. Y. 622, does not touch the matter.

Another consideration not without force is that we have a statute prescribing how contempts shall be punished. It was passed in 1830 to restrain arbitrary action by courts. Code 1899, chapter 147. I think it contemplates only fine and imprisonment. It curbs or lessens the common law power of courts. *State* v. *Hansford*, 43 W. Va. 773. Just as it was held to be the sole mode of punishment in *Galland case*, 44 Cal. 475.

But it is argued in answer to the point just discussed, that the striking out of the evidence is immaterial, as if all the evidence be considered the same decree would have been made. How do we know what the circuit court would have thought? The evidence was voluminous and flatly contradictory in material respects—contradictory as to the criminal conduct and as to desertion and other matters. Now, first, a decree without a hearing of both sides is not a judicial decision. The case has never been passed on by the circuit court. The party had right to have the judgment of the circuit court on his evidence and cause before this Court can consider the weight of the evidence. Had the decree on evidence on both sides been for the defendant, we could not reverse, unless this Court would think it clearly wrong, because he would have the advantage of that decision, and occupy a different position from that which he now occupies. We cannot, in the first instance, be asked to pass on the evidence. This is an *appeal* court, and is not called on to act until the circuit court has done so. There must be a hearing of the whole case. There has not been. "The Supreme Court will not consider questions not yet acted on by the circuit court." *Kesler* v. *Lapham*, 46 W. Va. 294; *Armstrong* v. *Town*, 23 *Id*. 50. This case, as made up on both sides, has never been decided by the circuit court. But second, the decree is void under the high authorities above given. Can it be, with rea-

son, said that where the whole of a defendant's case has been
struck out, consisting of a volume of material evidence, that
this Court should perform the function of a court of original
jurisdiction, treat the case as if heard on the whole evidence
in the court below and review it on the evidence on both
sides? When it is just as though the party was not before
the court, and was decreed against "without a day in court."
Shall we not rather say the case has not been heard—the de-
cree is not binding on the defendant, and remand the case
that it may be heard on the evidence? On that evidence we
indicate no opinion.

Considerable evidence of admissions in the country by the
defendant of criminal conduct was given, which is assailed as
incompetent. Can these admissions be considered? As it is
deemed by law in the interest of society that marriage should
not be dissolved on insufficient grounds, and cannot be dis-
solved by consent of parties, the common law held such ad-
missions not effectual to sustain a ground for divorce, cer-
tainly not alone. 30 Am. Dec. 544; Bishop on Marriage, Di-
vorce and Separation, sections 707, 730. The lowest grade of
evidence in weight. Nelson on Divorce, section 781. "While
not alone sufficient to warrant a decree, it is admissible in
connection with other evidence, unless a statute forbids."
14 Cyc. 682. Does our statute law, Code 1899, ch. 64, sec-
tion 8, ban such evidence wholly? We think so. The Leg-
islature intended to render it incompetent. "Such suit shall
be instituted and conducted as other suits in equity, except
that the bill shall not be taken for confessed, and whether
the defendant answer or not, the cause shall be heard inde-
pendently of the admissions of either party, in the pleadings
or otherwise." Now, this prohibits the bill from being taken
for true on default of the defendant to appear, thus making
it different from other suits, and in accordance with the rule
in divorce cases requires proof of the grounds of divorce.
Next, it forbids a decree though the wrongful act be admit-
ted solemnly in the answer. It must be proven. Now, if an
admission or confession in an answer is of no avail, why shall
we say that one made in the country is? Can a decree be
had thus by indirection when it cannot by an answer of con-
fession? Plain intent and policy would thus be violated. The
letter of the law is that the case shall be decided "independ-

ently of the admissions of either party in the pleadings or otherwise." What does this broad word "otherwise" mean? We must give it some effect, as it is sedately added. After saying default, silence, shall not avail, but proof must be made; after saying, with special reference to admissions in the answer, that they shall count nothing, this word is added to say that no admission in the country, outside the pleading, shall count. One case in Virginia on this statute seems to hold otherwise. *Bailey* v. *Bailey*, 21 Grat. 43. I have never been able to see with certainty what it means. Does it mean to say that admissions in letters only are competent? *Cralle* v. *Cralle*, 79 Va. 182, only goes to the effect that admissions may be used to *defeat* a divorce. *Latham* v. *Latham*, 30 Grat. 307, only says that defendant is entitled to a *denial* in his answer—that the act never designed to eliminate that pleading so far as to refuse the benefit of its denial. *Hampton* v. *Hampton*, 87 Va. 148, overrules *Bailey* v. *Bailey* by holding under the statute that "evidence that the defendant admitted the charge (of adultery) and a letter from her purporting to admit it, are inadmissible." If this is not the purpose of this plain statute what is it? Sometimes it operates to defeat justice; but it has a policy which the law has always held as to the marriage state. If wrong, the remedy is with the Legislature. Under another construction a party may obtain a divorce by his or her admission, or greatly aid by it in doing so. It would open the door to collusion be-- tween the parties; it would enable one party more easily to divorce himself.

The decree of the 8th day of December, 1903, is reversed and the case remanded for further proceedings.

*Reversed.*