# CHARLESTON.

THE CITY OF WHEELING v. THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY *et als.*

Submitted March 5, 1918.   Decided March 26, 1918.

1. FRANCHISES—*Secondary Municipal Franchise—Conditions Precedent.*

   The right of a public service corporation to hold and enjoy a secondary franchise granted by a municipal corporation and conferring priviliges and rights within the limits of the city, town or village, that can be exercised only by its permission, depends upon the continuous performance of the public duties assumed by the acceptance of the franchise, constituting a condition precedent to such right.   (p. 215).

2. SAME—*Municipal Franchise—Rescission—Equity Jurisdiction.*

   On the failure of such performance, the right or privilege granted by the franchise terminates, and a court of equity has jurisdiction to cancel the franchise, by way of rescission of the contract between the granting and accepting corporations. (p. 215).

3. SAME—*Bill for Rescission—Parties.*

   The assignor of such a franchise, having no interest in it and not guilty of any act or conduct constituting ground for such rescission, is not a necessary party to a bill filed to effect it.   (p. 214).

4.  TELEGRAPHS AND TELEPHONES—*Municipal Franchise—Unauthorized Acts—Injunction.*

A telephone company holding a franchise for the installation, maintenance and operation of one telephone system in a city, town or village cannot, without the consent of such municipal corporation, take over by purchase, another system constructed by another company, under another franchise, and operate both systems separately and contemporaneously, nor use the locations of such other system in the streets for wires and other appliances of its own system, nor take the benefit of other privileges granted to such other company, without having acquired its franchise as well as its tangible property; and a court of equity has jurisdiction to enjoin such acts.   (p. 214).

5.  EQUITY—*Bill—Joint Demurrer.*

A joint demurrer to a bill in equity by two defendants operates jointly and severally, and may be sustained as to one of them and overruled as to the other.   (p. 213).

6.  SAME—*Demurrer—Ruling.*

A general demurrer to a bill in equity setting up several grounds for relief challenges the sufficiency of the bill as a whole and does not call for adjudication as to the sufficiency of each of the several parts.   (p. 213).

7.  APPEAL AND ERROR—*Certification of Question—Affirmance.*

Upon a certification of the overruling of such a demurrer, under the last clause of sec. 1 of ch. 135 of the Code, the appellate court, on finding one part of the bill sufficient, will affirm the decision, without inquiry as to the sufficiency of the other parts.   (p. 216).

Questions Certified from Circuit Court, Ohio County.

Bill by the City of Wheeling against the Chesapeake & Potomac Telephone Company and the Consolidated Telephone Company.   Demurrer to bill overruled, and question certified by circuit court on joint application of the parties.

*Decree affirmed, and cause remanded.*

*M. J. Cullinan, Jas. W. Ewing,* and *Frank W. Nesbitt,* for plaintiff.

*Caldwell & Caldwell, C. Walter Artz,* and *J. Bernard Handlan,* for defendants.

POFFENBARGER, PRESIDENT:

On fifteen stated grounds, some of which do not differ materially, the Chesapeake and Potomac Telephone Company

and the Consolidated Telephone Company, both West Virginia corporations, jointly demurred to the amended bill of the City of Wheeling, filed in lieu of its original bill on which a temporary injunction had been granted, praying the relief sought by said original bill, namely, an adjudication of title in itself to all of the property of the Consolidated Telephone Company, by forfeiture under and by virtue of a clause of a franchise granted to the National Telephone Company, and assigned to the Consolidated Telephone Company, an injunction inhibiting and restraining the defendants from interference with the cables, poles, wires, conduits, instruments, apparatus, appliances and all other property alleged to have been forfeited to the City as aforesaid, and from in anywise removing or taking away any of the same or any portion thereof or intermingling the same with any other property of the defendants, or either of them, until the further order of the court, and a disclosure of the nature and character of all the items of property purchased by the Chesapeake and Potomac Telephone Company from the Consolidated Telephone Company, and an accounting for such portions of said property as have been taken away and removed by the defendants or either of them. The court overruled the demurrer and, on the joint application of the parties, certified its decision to this court for review, in accordance with the provisions of the last clause of sec. 1 of ch. 135 of the Code. The demurrer was joint and devoid of written assignments· of grounds, but the court certified the grounds above referred to, which were no doubt orally assigned in argument. The general purpose of the bill is prevention of the merger and consolidation of two telephone systems.

The bill represents and shows that, for a long time prior to April 10, 1900, the Central District and Printing Telegraph Company, a corporation, owned and operated a complete telephone system throughout the City of Wheeling, under a franchise granted by the city, and for some distance beyond its limits, without any · competition whatever. On that date, the council of the city passed an ordinance granting a franchise to the National Telephone Company of West

Virginia and its assigns, and thereafter both of said companies conducted separate and competitive telephone systems in the city. Sometime after April 10, 1900, the former changed its name and was subsequently known as the Central District Telephone Company. On January 15, 1914, the Consolidated Telephone Company, a West Virginia corporation, purchased from the National Telephone Company, its franchise and all of its business, property and contracts, and thereafter conducted and carried on the business in its name, until December 30, 1916. On that date, the Central District Telephone Company, by deed, conveyed to the Chesapeake and Potomac Telephone Company, all of its buildings, plants, switchboards, wires, cables, poles, conductors, subways, conduits, instruments, tools, apparatus, office fixtures, furniture, rights of way, easements, permissions, leased contracts, claims and demands, and all current net assets, as well as all rights, privileges and franchises then owned and possessed by it. On the same day, the Consolidated Telephone Company, by its deed, sold and conveyed to the Chesapeake and Potomac Telephone Company everything it possessed, except the assigned franchise granted by the city to the National Telephone Company, which franchise was expressly excepted from the operation of the deed. Having thus acquired all of the property and business of the two competing companies and the franchise under which one of them carried on its business, the Chesapeake and Potomac Telephone Company maintained and operated the two separate and distinct telephone systems and continues to do so, but it claims the right to convert and combine them into one and mainfests intention to do so. Informed of its purpose and intention, the council of the City of Wheeling, on September 18, 1917, passed a resolution calling upon said last named company to appear at a regular meeting of the council, to be held within thirty days from the date thereof, and make a full disclosure of its transactions with the Consolidated Telephone Company, assignee of the National Telephone Company, and its purpose in the purchase of what was known as the National Telephone Company system, and, if it should appear to have been a consolidation of the two systems or an attempt to consolidate

them, to show cause or reason, if any it could, why the property theretofore owned and operated by the National Telephone Company, its successors and assigns, should not be forfeited to the city and taken over by it.   Service of copies of the resolution was accepted by the statutory attorneys of the Consolidated Telephone Company and the Chesapeake and Potomac Telephone Company, but neither of them ever made any appearance before the council.   Their representatives, however, met with the City Manager and City Solicitor of the City of Wheeling and discussed the transaction complained of, but no settlement was agreed upon. . On the termination of these negotiations, if not earlier, the Chesapeake and Potomac Telephone Company, began the physical merger and consolidation of the two systems, and proceeded therewith, until the injunction already mentioned was awarded on the original bill.   In the meantime, the city council passed a resolution, October 30, 1917, declaring a forfeiture of all rights and privileges granted to the National Telephone Company, April 10, 1900, as well as a forfeiture of the title to all of the property of said Consolidated Telephone Company, to the City of Wheeling, and directing the City Solicitor to institute and prosecute such proceedings as he should deem necessary, to prevent the removal, destruction or loss of said property, or any of it, or the intermingling thereof with the property and telephone system of the Chesapeake and Potomac Telephone Company, and to secure for the city possession of all of said property.

The provisions of the National Telephone Company's franchise, granted April 10, 19100, upon which the city founds its claim of a contractual right or interest in the Consolidated Telephone Company's poles and underground system, the use of its plant and right to prevent merger and consolidation of its system with that of any other telephone company operating in the city, as well as its claim of title to the company's property by forfeiture, are secs. 6, 8 and 13 of the ordinance, reading as follows:

"Section 6.   Said grant is upon the further condition that the City of Wheeling shall have the right to place on the poles and within any underground system of said first named

company, and to use and operate all the wires, cables, devices and apparatus necessary to or used by said city for fire alarm, police, electric light wires or call system purposes, and at any and all times to place, replace, alter, repair and replenish the same."

"Section 8.   In consideration of the grant mentioned in the first section of this ordinance, said first named company agrees to furnish free of cost to said city, so long as said company uses the franchise hereby granted, forty-five telephones for municipal governmental purposes within said city. The said company also hereby agrees to furnish said city, so long as said company uses such franchise, additional telephones in said city, for such purposes, whenever ordered by the council, at a cost to said city of fifteen dollars per annum for each of said additional telephones."

"Section 13.   This grant is upon the further condition that should the said National Telephone Company of West Virginia at any time combine or sell out in any manner whatsoever to the Central District and Printing Telephone Company or any other telephone or telegraph company, then and in that event all rights and privileges hereby granted shall immediately be forfeited, and the whole plant, system and property of the said National Telephone Company of West Virginia shall be forfeited to and confiscated by the City of Wheeling and shall cease in every respect to be the property of the said National Telephone Company of West Virginia."

Although the demurrer is joint in form, it is joint and several in effect.   If, therefore, the bill is good as to one of the defendants and bad as to the other, the demurrer is separable and may be overruled as to one of them, and sustained as to the other.   *Mayor of London* v. *Levy*, 8 Ves. 403, 404; Story's Eq. Pl. sec. 445.   If there is any sufficient ground of relief in the bill as to either defendant, the demurrer was properly overruled as to him.   *Trough* v. *Trough*, 59 W. Va. 464; *Miller* v. *Hare*, 43 W. Va. 647; *Shoe Co.* v. *Haught*, 41 W. Va. 279; *Gay* v. *Skeen*, 36 W. Va. 582.   Although the court certifies the general demurrer was based upon numerous grounds, it must stand or fall as a whole ex-

cept as to the question of parties.   In other words, the bill against a party properly sued, cannot be divided in respect to grounds of relief and held to be good in part and bad in part and sustained as to the former.   ''We again say that where a bill contains two or more matters of suit, one good, one bad, the demurrer must be separate.   This has always been law.''   *Trough* v. *Trough,* cited.   To the same effect, see Story's Eq. Pl. sec. 443 and numerous authorities there cited.

Jurisdiction in equity to cancel the franchise granted to the National Telephone Company, by way of rescission, is fully sustained by well considered decisions of courts of the highest standing and character.   It was the duty of that company and its successor, the Consolidated Telephone Company, to prosecute the business authorized by its franchise and render the public the service it undertook by its acceptance of the provisions of the ordinance.   That duty was a continuing obligation, performance of which from day to day and time to time constituted a condition precedent to its right to hold and enjoy the privilege granted.   Failure or refusal to perform it terminated the privilege or franchise, not by way of forfeiture, but by expiration, agreeably to the intent and purpose of the grant and acceptance.   *Farmer's Loan and Trust Co.* v. *Galesburg,* 133 U. S. 156, 179; *City of Columbus* v. *Trust and Deposit Co.,* 218 U. S. 645; *City of St. Cloud* v. *Water etc. Co.,* 88 Minn. 329.   Failure of the Consolidated Telephone Company to discharge any of the duties it assumed and to exercise any of the rights conferred upon it, after the sale and conveyance of its property as aforesaid, specifically alleged in the bill, terminated its franchise and gave the city right to have the termination thereof judicially declared.

The National Telephone Company was not a necessary party to the bill seeking such cancellation, because its interest in the franchise had wholly ceased and it was no party to the transaction constituting the ground of the procedure.   It had a clear right to assign its franchise and sell and transfer its property to the Consolidated Telephone Company, for the ordinance imposed no restriction upon the right of sale to any non-competing company.   On the con-

trary, such a sale was impliedly authorized by the grant of the franchise to the National Telephone Company and its assigns. The Consolidated Telephone Company became complete owner of the property and it alone committed the act by which the right is alleged to have been terminated.

Jurisdiction by injunction to limit the Chesapeake and Potomac Telephone Company to the exercise of rights and privileges in the streets of the city, lawfully acquired by it from the Central District Telephone Company, whose franchise it has acquired, and rights and privileges therein, conferred by that franchise, and to restrain it from the exercise of rights in the streets not so acquired or conferred, is beyond question. *Landis Tp.* v. *Gas Light Co.,* 72 N. J. Eq. 347; *Franklin* v. *Nutley Water Co.,* 53 N. J. Eq. 601; *Somerville Water Co.* v. *Somerville Borough,* 78 N. J. Eq. 199. There is an allegation in the bill, which makes out a case within this jurisdiction. Under the franchise acquired from the Central District Telephone Company by the Chesapeake and Potomac Telephone Company, authorizing the maintenance and operation of a certain telephone system installed by the former, the latter cannot maintain and operate another system installed by another company whose franchise it has not acquired, without the consent of the city. If the acquired franchise authorizes maintenance of only one system, the holder thereof cannot operate two and thus subject the streets to a double burden for its purposes. In other words, the city may be willing to give space for two systems operated by different companies, but unwilling to permit space on its streets to be used by one company for the operation of two systems. The difference may or may not be very material in a practical sense, but it obviously constitutes a sufficient ground for denial of the privilege. Two separate systems take twice the space on the street, required for one. Moreover, the expense incident to the maintenance and operation of two systems by one company, if authorized, might necessitate higher rates for service. All expenses rightfully incurred enter into the matter of rates, for the company is entitled to charge enough to cover proper expenses

and reasonable compensation for the use of its invested capital.

The bill contains no prayer for an injunction restraining the maintenance of both systems, but sets forth facts constituting ground for the award of such relief by a final decree, under the prayer for general relief, and by the award of a temporary injunction under a mere amendment of the prayer.

Although somewhat indefinite, the bill sufficiently alleges purpose and intention on the part of the Chesapeake and Potomac Telephone Company, to use street locations acquired by the Consolidated Telephone Company, in the merger of the two systems. According to its allegations, the purpose is to connect the wires of the two systems, possibly not throughout the city, but in portions thereof, at least, and thus effect a transfer of the Central District Telephone Company system to poles and subways of the consolidated system. Though the franchise under which the Chesapeake and Potomac Telephone Company operates is not exhibited with the bill, so as to enable the court to see just what rights it confers, it may be assumed that the company has no right to set its poles where it pleases, and it has never acquired right to occupy the ground used by the Consolidated Telephone Company. Indeed, lack of such right is impliedly alleged by the bill. While its allegation as to the intention respecting use of the Consolidated Company locations, poles and subways are indefinite, they constitute a sufficient basis for admission of evidence defining occupations and use of such locations, which could be enjoined by a final decree.

The two grounds of jurisdiction noted are rendered more or less obscure by the main purposes of the bill, forfeiture of the title to the property of the Consolidated Company, prevention of the merger of the two systems and maintenance of competition in the telephone service of the city. Whether there is right of relief as to these matters or any of them, it is neither necessary nor proper to inquire. The general demurrer does not raise them. To examine and pass upon all the different grounds set up would amount to the giving of directions as to the relief which might be awarded

in some instances and denied in others. The function of the appellate court, on a certificate of this kind, is to test the sufficiency of the pleadings only. One good ground of relief in the bill, as to the Chesapeake and Potomac Telephone Company, justified the overruling of the demurrer as to it. Separate demurrers going to the various parts of the bill, if interposed, would have called for inquiries as to the sufficiency of the parts. In the absence thereof, such inquiries and determinations would amount to directions as to relief to be granted or denied on the bill, in advance of decisions respecting them, by the trial court.

For the reasons stated, the decree complained of will be affirmed and the cause remanded.

*Decree affirmed and cause remanded.*