Statement.

# Richmond.

STROTHER'S ADMINISTRATRIX v. STROTHER.

January 17, 1907.

Absent, Cardwell, J.

1. EQUITY—*Multifariousness—Different Causes of Action—One Insufficient.*—In order to sustain the objection of mutifariousness to a bill on the ground that it contains two different causes of action against the same parties two things must concur: First, the different grounds of suit must be wholly distinct, and, second, each ground as stated must be sufficient to sustain a bill. If the objection of multifariousness be interposed because two distinct claims are asserted in the same bill, one of which is a purely legal demand, enforceable only at law, the objection is bad.

2. ACTIONS—*Parties—Claim of Partner Against Firm.*—A partner cannot sue at law the firm of which he is a member, nor can he, upon a partnership debt, sue at law the other members of the firm.

3. DEMURRER—*Grounds Stated—Others Not Considered.*—Under section 3271 of the Code a trial court cannot consider any grounds of demurrer other than those specifically stated in the demurrer, nor can this court, except where the trial court has no jurisdiction of the case.

4. NOVATION—*Case in Judgment.*—The defense relied on in this cause, that the complainant's demands against the firm had been assumed by two of the surviving members, and the firm released, so that his demands are purely legal and cognizable only in a court of law, is not sustained by evidence of that clear and satisfactory character required to establish a novation.

Appeal from a decree in chancery of the Corporation Court of the City of Lynchburg. Decree for complainant. Defendant appeals.

*Affirmed.*

The following is a copy of the bill filed in this cause:

"To the Hon. Frank P. Christian, Judge of the Corporation Court of the city of Lynchburg:

"Your complainant, Sidney Strother, in his own right as executor of Jennie L. Strother, deceased (who sues for the benefit of Robert Strother, to whom he has assigned the claim hereinafter asserted), respectfully represents that on the 15th day of December, 1893, a copartnership was formed between William M. Strother, C. B. Robertson, W. M. Stokes and complainant (Sidney Strother) for conducting the business of wholesale and retail druggists in the city of Lynchburg· by the firm name and style of 'W. A. Strother & Son.' The business had theretofore been successfully conducted for many years by the father of complainant, under the same firm name and style, 'W. A. Strother & Son.'

"The capital of the said partnership was originally intended to be $25,000, and the said W. M. Strother and complainant were each to contribute the sum of $10,000, and C. B. Robertson and W. M. Stokes each the sum of $2,500.

"It was contemplated that the capital of the said partnership should be invested in the stock, fixtures, etc., of the business lately conducted as aforesaid by W. A. Strother, father of complainant, it being conjecturally estimated that the said stock, fixtures, etc. (not including the debts due to the said W. A. Strother, however), would aggregate about $40,000, and that complainant and the said W. M. Strother who, under the will of their said father, were each entitled to one-fourth ($\frac{1}{4}$) interest in the said stock, fixtures, etc., would contribute the capital to be put into the business by them as aforesaid in the form of their interests in the said stock, fixtures, etc.; and it was provided that if the one-fourth ($\frac{1}{4}$) parts of the said W. M. Strother and complainant should be less than $10,000 each, then the deficiency should be made up by the application of a sufficient

amount from their respective shares of the profits of the business, and if sufficient profits should not be made, then the deficiency would be regarded as personal debts due by them respectively to the concern, to be accounted for in settlement as of December 31, 1895, with interest; and if the one-fourth ($\frac{1}{4}$) parts of complainant and said W. M. Strother should exceed the sum of $10,000 each, then they should each receive credit on the books of the firm for such excess as for so much money loaned to the firm, not to be paid, however, before the 31st day of December, 1895, this being the time at which, under the original articles of copartnership, the same should expire.

"It was provided that each of the partners should be entitled to receive a salary for his services, namely: W. M. Strother at the rate of $1,800 *per annum,* and each of the other three partners $1,000 *per annum,* in consideration of which they respectively agreed faithfully to give their whole time and best services to the business. The profits and losses of the business were to be apportioned according to the input of each partner—that is to say, the said W. M. Strother's share to be two-fifths (2-5), complainant's share two-fifths (2-5), C. B. Robertson's, one-tenth (1-10) and W. M. Stokes one-tenth (1-10); and in the settlement at the close or dissolution of the business the net assets were to be drawn out and divided, after the payment of the liabilities, in the proportions named.

"Upon the taking of the inventory of the stock, etc., of the old concern it was ascertained that the shares of the said W. M. Strother and complainant therein were only $8,915.81 each, and thereupon, by a written contract signed and sealed by all four of the partners and bearing date January 16, 1894, it was agreed that the capital stock of the said firm should be $23,000 instead of $25,000, the said W. M. Strother and complainant each contributing $9,000 and the said C. B. Robertson and W. M. Stokes each $2,500, the interest of the several partners in the profits and losses of the business to be as follows: W. M. Strother, three-eighths (3-8); complainant, three-eighths (3-8);

C. B. Robertson, one-eighth (1-8), and W. M. Stokes, one-eighth (1-8). The interest of W. M. Strother and complainant respectively, in the stock, etc., of the old concern and the agreed input of each into the new, being in the case of each too little by $84.19, it was provided that the deficit should be paid in by them respectively in cash.

"In all other respects the original articles of partnership remained unchanged.

"Complainant files herewith the original articles of copartnership, together with the modification thereof, bearing date January 16, 1894, as an exhibit with this bill.

"Complainant shows that the said new concern having bought and taken over to itself the stock, fixtures, etc. (but not the debts), of the old concern, became liable to Mrs. Jennie L. Strother (mother of complainant and widow of W. A. Strother, deceased) for her one-fourth (1/4) share thereof, under the will of her said husband and by the assent of his executors, to-wit: for $8,915.82, and on the 15th day of December, 1893, the said W. M. Strother, complainant (Sidney Strother), C. B. Robertson and W. H. Stokes, composing the new firm of W. A. Strother & Son, entered into a covenant under their respective hands and seals, whereby they borrowed of the said Jennie L. Strother her one-fourth (1/4) part of the agreed price of the said stock, fixtures, etc. ($8,915.82), until the 31st day of December, 1895, or the dissolution of said firm, if such dissolution should occur before that date, agreeing to pay her six *per cent. per annum* interest upon the said sum monthly, and the said principal sum itself on the 31st day of December, 1895, or on the dissolution of said copartnership, if that should occur prior to the said date. It was further covenanted and agreed, among other things, that in the event any financial difficulty of a serious nature should befall the firm the agreement and covenant aforesaid between the members of the said firm and the said Jennie L. Strother might be put on record in the clerk's office of the Corporation Court of Lynchburg, and from the time of the

recordation of the said covenant and agreement it should be and constitute a first lien upon the assets of the said firm. The said covenant and agreement is herewith filed as another exhibit with this bill.

"Complainant shows that, notwithstanding the expiration of the term originally agreed upon, the said partnership in fact continued in active business until January 1, 1898, when it sold out its stock, fixtures and good-will to the Strother Drug Company, as will be hereinafter more particularly set forth, and, meanwhile, to-wit: on the 25th day of January, 1896, by a written agreement signed and sealed by the said Jennie L. Strother, W. M. Strother, W. M. Stokes, C. B. Robertson and complainant (Sidney Strother), it was covenanted and agreed that the said loan of $8,915.82 should be renewed for two years from January 1, 1896, or until January 31, 1897, 'under the same terms and conditions precisely' as were contained in the original covenant and agreement as aforesaid. The said renewal contract is written at the foot of the original covenant and agreement between the members of the said firm and the said Jennie L. Strother, and is asked to be treated as an exhibit with this bill.

"Complainant shows that the said new firm of W. A. Strother & Son began business, as contemplated by the said articles of partnership, on, or soon after, the date thereof, and continued actively to engage in such business until, to-wit: the first day of January, 1898, when it sold out its stock, fixtures and good-will (but not the debts due to it) to the Strother Drug Company for the sum, to-wit: of $40,114.92, payable in the stock of the said company. The stock so received was issued to the parties, as follows: To W. M. Strother, $16,330.68; to complainant (Sidney Strother), $16,330.69; to W. M. Stokes, $4,943.56; to C. B. Robertson, $2,500. The distribution of the stock of the Strother Drug Company was subject to a settlement of the partnership transactions thereafter to be had, and your complainant (Sidney Strother) undertook, at the instance and re-

quest of the other partners, the task of collecting the debts due to the firm, and the liquidation and settlement of the debts due by it—in which undertaking your complainant flatters himself that he was unusually successful, the losses on account of failure to collect debts being less than 1 *per cent.*

"Your complainant has succeeded in collecting all of the collectible debts due to the firm, except one, which is now in the hands of an attorney and from which it is expected that two or three hundred dollars may be realized.

"Complainant shows that on the ———— day of 189—, his mother, the said Jennie L. Strother, departed this life leaving a will giving her whole estate, real and personal, to complainant and nominating him her executor. A duly certified copy of said will, together with a certificate of complainant's qualification as executor thereof, is herewith filed as an exhibit with this bill.

"Complainant further shows that on the 21st day of August, 1899, the said W. M. Strother died intestate, and that on September 4, 1899, Roberta M. Strother, his widow, qualified as his administratrix.

"Complainant further shows that the said partnership of W. A. Strother & Son has never been settled. He believes, but is not sure, that the said W. M. Stokes and C. B. Robertson are substantially even with the concern, and that upon a settlement of the said partnership little or nothing will be due to or from either one of them. But complainant charges that upon a proper settlement of the said partnership a large sum, approximating $4,000, will be found to be due by the said W. M. Strother, or his estate, and that the whole of such indebtedness is due and payable to complainant (or his said assignee) either as partner or as executor of the said Jennie L. Strother.

"Complainant shows that on, to-wit: the 4th of April, 1901, the said Roberta M. Strother, administratrix of W. M. Strother, deceased, turned over to complainant, in part payment and on account of the sum due by the estate of her said intestate, twenty shares of the stock of the Strother Drug Company, which com-

plainant agreed to take at par, but he avers that there still remains due by the said W. M. Strother's estate to complainant (for the benefit of Robert Strother) about $4,000. He was willing at one time to take a less sum, if paid without suit, but he now claims all that may be due him.

"Being without remedy, save in a court of equity, complainant prays that the said Roberta M. Strother, administratrix of W. M. Strother, deceased, C. B. Robertson and W. M. Stokes may be made parties defendant to this bill with leave to answer its allegations—but not under oath, which is hereby expressly waived; that the accounts of the late partnership of W. A. Strother & Son may be settled; that the amount due to complainant either as partner or as executor of his mother, Jennie L. Strother, may be ascertained, and a proper decree therefor entered, for the benefit of complainant's said assignee, Robert Strother; and that all such other, further and general relief may be afforded complainant as the nature of his case may require and to equity shall seem meet.

"And your complainant ever prays, etc."

*Harrison & Long,* for the appellant.

*Caskie & Coleman,* for the appellee.

BUCHANAN, J., delivered the opinion of the Court.

The first error assigned is to the action of the court in overruling the demurrer to the bill.

The specific ground of demurrer assigned in the trial court was that the bill "is multifarious, in that it undertakes to assert in the same suit two separate and distinct claims: (1) the claim of Sidney Strother in his own right for a balance due him on a settlement of the partnership accounts of the firm of W. A. strother & Son; and (2) a claim of the said Strother as administrator of Jennie L. Strother, deceased, against said firm of

W. A. Strother & Son, this claim being merely a claim for a debt and enforceable only in an action at law."

If the debt due the complainant as the administrator of Jennie L. Strother had been a purely legal demand, and one of which a court of equity had no jurisdiction, its assertion would not have rendered the bill multifarious; for in order to sustain the objection of multifariousness because the bill contains two different causes of action against the same person "two things must concur: first, the different causes of action must be wholly distinct; second, each ground must be sufficient as stated in the bill." *Snavely* v. *Harkrader,* 29 Gratt. 112, 126, and authorities cited.

It appears from the allegations of the bill that the debt due the complainant as administrator was a debt due from the firm of W. A. Strother & Son, of which the complainant was a member. The complainant had, therefore, no remedy at law for its collection; for no one can be both plaintiff and defendant in the same action at law, nor can an action be brought against certain members of a partnership, leaving out the others who compose it, upon a contract entered into with the firm. *Wright* v. *Michie,* 6 Gratt. at page 357, 358; *Aylett* v. *Walker,* 92 Va. 540, 542, 543, 24 S. E. 226.

The only ground of demurrer assigned in the trial court being the one named, no other ground could be considered by it (Code, section 3271), and, of course, no other can be considered by this court (except where the trial court has no jurisdiction of' the case); otherwise the appellate court could reverse the lower court for errors it had not committed.

"All the other assignments of error are," in the language of the petition for appeal, "predicated on the single ground of defense that the claim asserted in the bill is a legal and not an equitable claim, and that the court should not therefore have taken jurisdiction of it." The contention of the appellant is that the claims asserted by the complainant in his own right and as administrator of Mrs. Jennie L. Strother are in fact one

and the same demand, and against the estate of the appellant's decedent, and not a debt due from the firm of W. A. Strother & Son.

If this were true the bill ought to have been dismissed upon the hearing. It appears that on the 15th day of December, 1893, a copartnership was formed between William M. Strother, the appellant's husband and decedent; Sidney Strother, the complainant; C. B. Robertson and W. M. Stokes, under the firm name of W. A. Strother & Son, for the purpose of conducting a wholesale and retail drug business in the city of Lynchburg. That business had theretofore been carried on by W. A. Strother, the father of William M. Strother and Sidney Strother, under the style of W. A. Strother & Son. The new concern acquired the stock, fixtures, etc., of the old concern (except debts due it), in which Mrs. Jennie L. Strother, the widow of W. A. Strother and the mother of the complainant, had a one-fourth interest under the provisions of her husband's will. The members of the new concern entered into an agreement with her, under their hands and seals, on the 15th day of December, 1893, by which she agreed to and did loan them the value of her interest in the stock, fixtures, etc., in the old concern, which was fixed at the sum of $8,915.82, and which sum, with interest payable monthly, they bound themselves as partners to pay her on the 31st of December, 1895, or upon the dissolution of the partnership if that should occur before that date. By a subsequent agreement under seal that loan was extended for the period of two years upon the same terms and conditions as the original agreement provided for. A short time before the dissolution of the partnership, which took place as of January 1, 1898, Mrs. Jennie L. Strother died, leaving her estate, including the debt due to her from the partnership, to her son, the complainant, who was named as her executor. Immediately upon the dissolution of the partnership a joint stock company was formed under the name of the Strother Drug Company. Its stockholders were the members of the firm of W. A. Strother

& Son, except Robertson, who sold his interest in the partnership assets to his copartner, Stokes. The partnership assets, except the debts due it, were transferred to the joint stock company and stock issued to each stockholder in proportion, it seems, to his interest in the partnership assets.

The contention of the appellant is that when the joint stock company was formed the debt due the complainant, as executor and sole legatee of Mrs. Strother, which was due and unpaid, was provided for, so far as the partnership was concerned, by individual arrangements between him and his copartners, W. M. Strother and W. M. Stokes, by which they, respectively, undertook and agreed to pay the said debt, and that thereafter there was no liability upon the partnership for its payment.

The commissioner who was directed to settle the partnership accounts of W. A. Strother & Son, and to ascertain and report what sum or sums, if any, were due to the complainant, either as partner or as executor of Mrs. Strother, reported among other things that the appellant's decedent was indebted to the firm of W. A. Strother & Son in the sum of $4,464.22, and that said firm was indebted to the complainant in the sum of $4,430.21. The appellant excepted to the commissioner's report, upon the ground that the evidence showed "that there had been a final settlement of the partnership affairs of W. A. Strother & Son, and a complete adjustment of accounts among the partners; and that the indebtedness, if any, of the late W. M. Strother to the complainant was an individual debt originating in an agreement between them, whereby, for the purpose of forming the Strother Drug Company, the former was allowed to overdraw his share, at the expense of the said Sidney Strother (the complainant), in consideration of which he was to pay him the amount of the excess."

The court overruled this exception and confirmed the report of the commissioner upon that subject. There is some evidence tending to sustain the contention of the appellant that there had been a novation of the agreement between Mrs. Strother

and the firm of W. A. Strother & Son, and that the debt due her estate had been assumed by W .M. Strother and W. M. Stokes individually. Without discussing the evidence in detail it is sufficient to say that the proof is not of that clear and satisfactory character which is required of a party who relies upon a satisfaction and discharge of an original debt by the creation of a new obligation. *Fidelity L. & T. Co.* v. *Engleby,* 99 Va. 168, 37 S. E. 957, and authorities cited.

We are of opinion, therefore, that there is no error in the decree appealed from and that it should be affirmed.

*Affirmed.*