# CHARLESTON.

THE OHIO FINANCE COMPANY v. MANNINGTON WINDOW GLASS COMPANY *et al.*

Submitted April 30, 1920.     Decided May 4, 1920.

1. EQUITY—*Order of Publication Stating Character of the Demand in General Terms is Sufficient; Order of Publication Takes Place of Process to Non-resident Defendant.*

   The function of an order of publication is to take the place of process as to a nonresident defendant, and where such order of publication states in general terms the character of the demand upon which the suit is brought, and the general purpose of the suit it will be sufficient. It is not necessary that the object of the suit should be stated with the same detail and precision as is required in a pleading. (p. 324).

2. SAME—*General Demurrer to Bill Will Be Overruled Where Plaintiff is Entitled to Some Relief.*

   Where a bill in equity makes several different claims for relief, and the plaintiff, upon the showing made by such bill, is entitled to some of them, and is not entitled to others, a general demurrer thereto will be overruled. (p. 326).

3. SAME—*All persons Interested Should Be Made Parties.*

   Courts of equity delight in putting an end to controversies, and when a suit is brought in such a court, ordinarily all

persons whose interests may in any wise be affected must be made parties, even though some of the controversies set up might not in any way affect the interests of absent parties. (p. 327).

4. APPEAL AND ERROR—*Decree Granting Proper Relief Will Not be Reversed for Want of Parties Against Whom no Relief Could be Had.*

Where a demurrer to a bill based upon the want of necessary parties has been overruled, and it appears upon an appeal to this Court that the plaintiff is not entitled to the relief which, according to the contention of his adversary, makes necessary the absent parties, and he is not asking such relief, a decree granting the relief to which the plaintiff is entitled will not be reversed. The allegations of the bill which call for additional parties will be disregarded by this Court because of the fact that the developments upon the final hearing have eliminated them from consideration in the case.   (p. 328).

5. CORPORATIONS—*Officers and Directors of Insolvent Corporation Are in a Sense Trustees for the Benefit of Creditors.*

The officers and directors of an insolvent corporation are in a sense trustees holding the property of such corporation for the benefit of all of the creditors, and they will not be allowed to dispose of such corporate property for their own benefit to the prejudice of the corporate creditors.   (p. 333).

6. SAME—*Sale by Officers and Directors of Insolvent Corporation in Fraud of Unsecured Creditors is Void as Against Them.*

Corporate officers and directors of an insolvent corporation who dispose of its property and apply the proceeds arising from the sale thereof to the discharge of debts and obligations of the corporation for which they are guarantors, sureties or endorsers, to the exclusion of other creditors who have no security for the payment of their debts, are guilty of a fraud upon such other creditors, and such sale, if the purchaser participated in such fraud, will be held to be invalid so far as it affects the interests of creditors of the corporation not provided for.   (p. 333).

Appeal from Circuit Court, Marion County.

Suit by the Ohio Finance Company against the Mannington Window Glass Company, John A. Ford, the Marion Window Glass Company, and others. Decree for plaintiff, and the named defendants appeal.

*Reversed in part, and modified and affirmed in part.*

86 W. Va.

*L. S. Schwenck* and *James A. Meredith,* for appellants.
*Harry Shaw, P. W. Gearhart* and *J. H. Dyer,* for appellee.

RITZ, JUDGE.

This suit was instituted for the purpose of establishing certain indebtedness claimed by the plaintiff against the defendant Mannington Window Glass Company, and subjecting to sale in satisfaction of said indebtedness certain property in the hands of the defendants John A. Ford and Marion Window Glass Company, which it is asserted was transferred to those defendants by the defendant Mannington Window Glass Company in fraud of the plaintiff's rights. The court below entered a decree adjudging that the plaintiff was entitled to recover certain of the claims asserted by it, and decreed that the property sought to be subjected to the satisfaction thereof was subject to such claims, and decreed the sale thereof in satisfaction of the same. He also found that the plaintiff was entitled to recover on the other claims set up, and referred the cause to a commissioner to ascertain the amount of such recovery. He further decreed that any sale of the property should be made subject to a lien in favor of any first mortgage bonds which may have been issued and are outstanding, without determining whether there were any issued and outstanding, and, if so, how many. From this decree the defendants Mannington Window Glass Company, John A. Ford and Marion Window Glass Company prosecute this appeal.

The first matter which we are called upon to consider is a motion made by the defendant John A. Ford to quash the order of publication issued against him. He appeared specially for the purpose, and for the purpose only, of moving to quash the order of publication, upon the ground that the object of the suit is not sufficiently stated therein, in that it shows that the suit is brought to recover the amount of different notes, without showing to whom they were payable originally, or the dates thereof, or the time they had to run, or the amount thereof. An examination of the order of publication shows that the purpose of the suit is to recover a decree for the amount of certain notes and debts held by the plaintiff against the Mannington Window Glass Company, and to set aside certain conveyances, which are

therein fully described, as fraudulent, and decree the property to sale in satisfaction of said debts upon the ascertainment of the amount thereof. The object of an order of publication is to take the place of process, and while it is required that such an order shall state in general terms the object of the suit, so that the defendant against whom it proceeds may be advised of the general nature of the claim asserted against him, it is not contemplated that it shall set up the claim with that particularity which is required in a pleading. Where the general nature of the cause of action asserted is set up, as it is declared in this case to be upon certain notes and claims due by the Mannington Window Glass Company to the plaintiff, and that the purpose of the suit is to recover these claims against the Mannington Window Glass Company, and to set aside certain deeds mentioned made by said Mannington Window Glass Company, which it is claimed were in fraud of plaintiff's rights, it sufficiently informs the defendant of the object of the suit, and more particular and detailed information can, of course, be obtained by him upon his appearance and examination of the bill filed. The authorities cited by the appellant Ford upon this question do not sustain his contention. In *Hoffman* v. *Shields,* 4 W. Va. 490, it was held that the record did not show that the order of publication had been executed as required by law. There was no question made as to the sufficiency of it as to substance. In *Steenrod* v. *R. R. Co.,* 27 W. Va. 1, it was held that the order of publication in that case sufficiently stated the object of the suit, and it does not appear from the recitations contained in the opinion that it was any more specific than the order sought to be quashed in this case. In the case of *Styles* v. *Laurel Fork Oil & Coal Co.,* 45 W. Va. 374, it was held that the order of publication was not sufficient to bring in a particular defendant against whom it did not purport to run. The only effect of that holding is that an order of publication will not be held to constitute process as to a defendant upon whom it does not call to answer the suit.

It appears that prior to the 15th of May, 1916, the defendant Mannington Window Glass Company owned and operated a glass plant in the city of Mannington. This company had been organized in the year 1914 by the defendant John A. Ford, A. J. Solomon, George E. McCulley, J. N. Braddock, C.

D. Swetland, and perhaps others associated with them.  The bill alleges that at the time of the organization of the company it was agreed that A. J. Solomon should secure a location for the plant of the company, some of the associates then being  the owners of an old glass plant which it was desired to relocate, and for his services in securing the new location, by which is meant getting an advantageous offer from some city or town which desired the location of the plant within its limits, he was to receive ten thousand dollars of the capital stock of the company and his expenses attending his efforts in that behalf; and, further, that after he had so succeeded in locating the plant at Mannington it was agreed that if he would supervise the erection of the plant he should receive the additional sum of five thousand dollars in stock and his actual expenses while thus engaged.  It is alleged that Solomon performed the  agreement upon his part by procuring the location at Mannington for the plant, the chamber of commerce of that city donating a site, and certain business interests agreeing to take certain  first mortgage bonds of the company which it contemplated issuing for the purpose of raising money to assist in the erection of the plant; and, further, that he superintended the construction of the plant in accordance with his agreement; that he spent considerable sums of money for the benefit of the company, not only in the way of paying his own personal expenses while engaged in securing the location and in superintending the construction, but also by way of advancements to the company for the purchase of material and supplies used during the construction.  After he had completed his work and the plant was in operation he rendered an account claiming that there was due him the sum of $11,931.78.  This account he presented to the president of the company, who was at that time the defendant Ford, and was advised that it would have to be checked up, and if ascertained to be correct, it would be taken care of.  He then presented it to the treasurer of the company, J. N. Braddock, and insisted on Mr. Braddock checking it up and making settlement.  Braddock checked it up, as he states, the best that he was able to do under the circumstances, and Solomon, being insistent upon having settlement, was given five notes covering so much of the account as Braddock thought to be correct, ag-

gregating $4931.50. Solomon admitted two credits in the account which, with the notes given him by Braddock as treasurer of the company, reduced the balance to $4925.28. The notes given by Braddock for the company consisted of four notes of $1000.00 each, and one note for the sum of $931.50. One of the notes for $1000.00 it is claimed was negotiated to the plaintiff a very few days after it was delivered to Solomon, and the plaintiff, according to its contention, has been the owner and holder of this one thousand dollar note ever since. The other three one thousand dollar notes, when they became due, were taken up, and there were issued in their stead six five hundred dollar notes, two of which are now held by the plaintiff, and form part of its claim set up in this case. The note for $931.50 is likewise now held by the plaintiff, and it is asserted is part of its claim, making $2931.50 evidenced by notes. The balance claimed by Solomon on the account, to wit, $4925.28, he assigned to the plaintiff, and that constitutes another part of its claim set up in this case. Subsequently he also assigned to the plaintiff eighty-five shares of the stock which had theretofore been issued to him by the Mannington Window Glass Company, and this constitutes the remainder of its claim. It is asserted by the bill that on the 15th of May, 1916, at a meeting of the stockholders of the Mannington Window Glass Company, a resolution was passed authorizing the sale of all of its property and assets to the defendant John A. Ford for the consideration of $98,000.00, which was to be paid by the said Ford discharging certain obligations of the said Mannington Window Glass Company, which did not include the debts now asserted by the plaintiff. In accordance with this authorization all of the properties of the company were conveyed on that day to the said Ford, and he subsequently, as is shown in the case, paid off the debts which he agreed to pay as consideration for the property, which amounted to more than one hundred thousand dollars instead of ninety-eight thousand dollars, as shown by the resolution of sale. Ford carried on the operations of the plant until the month of July, making certain improvements thereto, and at that time he organized the defendant Marion Window Glass Company for the purpose of taking over the property and operating it as a corporation. It is shown that he is the

sole owner of this corporation, the other stockholders being the recipients from him of a share each without any consideration, in order to have the number of shareholders required by law. Subsequent to this time. and in order to carry on and finance its business, the Marion Window Glass Company authorized the execution of a mortgage to secure the payment of sixty-five thousand dollars of first mortgage bonds. This mortgage was duly executed and the bonds duly issued, and as appears from the record, without any effort at contradiction, sold and are now outstanding obligations of the defendant Marion Window Glass Company. Shortly thereafter the plaintiff instituted this suit alleging the indebtedness of the Mannington Window Glass Company to it as above stated, and further alleging that the transfer of its assets by the Mannington Window Glass Company to Ford, and by Ford to the Marion Window Glass Company, constituted fraudulent transfers so far as it was concerned; and further that the mortgage executed to secure the payment of the sixty-five thousand dollars of bonds was fraudulent, and that no such bonds had in fact been issued, or if they had been were held by parties fully cognizant of plaintiff's rights at the time they took the same, wherefore the said deeds, as well as the said mortgage, should be set aside and held for naught, so far as plaintiff's claim is concerned, and a decree entered directing a sale of the property in satisfaction of plaintiff's demands.

A demurrer was filed to the bill by the defendants Mannington Window Glass Company, Marion Window Glass Company and John A. Ford, and it is insisted that the court erred in overruling this demurrer. The only ground urged in argument in support of the demurrer is the failure to make the holders of the $65,000.00 of first mortgage bonds parties to the suit. It is insisted that inasmuch as the bill alleges that the holders of these bonds took the same in fraud of plaintiff's rights, and that the deed of trust executed to secure the payment of the bonds should be held subordinate to the rights of the plaintiff in the property, they should be made parties defendants to the bill in order that they might have opportunity to protect their interests. Ordinarily a demurrer to a bill will not be sustained unless it appears that the plaintiff is not entitled to any relief.

86 W. Va.

It may be that it will not entitle him to all the relief which he demands, but if he is entitled to any substantial part thereof the demurrer will ordinarily be overruled. *Gay* v. *Skeen,* 36 W. Va. 582. This rule, however, is qualified by another to the effect that when a suit is brought in a court of equity, because of the delight of such courts to put an end to all controversy, all parties who may be in any wise interested will be required to be brought before the court to the end that when a decree is entered it may conclude every interest which could be affected by the litigation. In this case, if the allegations of the bill are true, with the parties who are now before the court the plaintiff is entitled to have a decree against the Mannington Window Glass Company for the amount of the debt asserted by it, and to have the property now held and operated by the Marion Window Glass Company subjected to sale in satisfaction of that debt, subject, however, to the lien created by the deed of trust given to secure the payment of the sixty-five thousand dollars of first mortgage bonds. For the purpose of getting the above relief the holders of the bonds would not be necessary parties. The trustees holding the legal title to the property are parties to the suit, but unless the interests of the bondholders are sought to be affected there would be no necessity for making them formal parties. But the plaintiff goes further and alleges that the lien of the bondholders is subordinate to the plaintiff's rights, and prays that the deed of trust securing the bonds be set aside so far as the same affects the plaintiff, and for a sale of the property free of this lien. It may be that the plaintiff would not be entitled to this relief without making the bondholders parties to the bill in some way. In this case, however, we find that the plaintiff has practically abandoned the effort to get any relief which would affect the interest of these bondholders. It is shown that the bonds have all been issued and are outstanding in the hands of holders in due course, and no effort is made to show any infirmity in the title of the holders of these bonds. Nor was any decree asked at the hearing affecting the interests of the bondholders. Inasmuch as all of the relief desired at the hearing could be given without any necessity of having the bondholders before the court, will this Court now sustain a demurrer to the bill because allegations were made in it which

the plaintiff subsequently abandoned, and relief asked which at the hearing it no longer sought? In Story's Equity Pleadings, § 135a, the author comments on this practice of courts of equity in requiring all parties to be brought before the court which are necessary to a full and complete determination of every controversy that may arise in the proceeding, and asserts that this is not so much because the party demurring is entitled to have it as it is due to the inherent desire of a court of equity to clear up all controversies which may arise in the course of litigation, and the author lays down the doctrine that where it would be unduly burdensome or vexatious to compel the party to bring in additional parties that might be incidentally interested in some phase of the case, it will not be done if the relief sought can be granted, even though not to do so might leave some matter of controversy affecting the subject matter undetermined. We cannot say here on the whole case that it would serve any useful purpose to bring in these bondholders. No case is made by the proof entitling the plaintiff to any relief which would affect their interest, nor is any relief now asked which would affect the bondholders in any way. This being the state of the case we will not reverse the decree because the court below overruled the demurrer.

The defendants defend against the suit on the grounds: first, that the Mannington Window Glass Company is not indebted to the plaintiff, nor was it indebted to its assignor Solomon on account of the matters set up in the bill; and second, upon the ground that even if it was so indebted the sale made of its property was a fair one for a full and adequate consideration, and free from any fraud, and it is necessary for us to inquire whether either or both of these defenses are good.

As before stated, the plaintiff is the assignee of A. J. Solomon as to the open account set up in this case, and is likewise the assignee of A. J. Solomon as to the eighty-five shares of stock held by it. It appears that the one thousand dollar note transferred to it was received from Solomon a few days after its execution and before it was due. It claims to be the holder of the two five hundred dollar notes sued on, and of the note for $931.50 in due course, its contention being that Solomon had a loan at a bank in Mannington for whoch these notes were

deposited as collateral security, and at Solomon's request it took over from that bank that obligation, and took with it the collateral there deposited to secure it. Of course, if the plaintiff is the holder of the notes referred to in due course, they being negotiable notes, it is not material whether the defendant Mannington Window Glass Company owed Solomon that amount or not when it gave the notes, but as to the open account set up in the bill and relied upon, the plaintiff could not recover thereon unless the Mannington Window Glass Company was indebted to Solomon in that amount. It can enjoy no rights as an assignee of that account that Solomon could not have enforced had he still remained the owner thereof.

It would seem that there is no merit in the claim set up by it on account of the eighty-five shares of stock transferred by Solomon. Solomon was the owner of this stock at the time the Mannington Window Glass Company sold its properties and transferred it to the plaintiff subsequent to that date. The stock was present at the meeting at which the sale was made, Solomon being represented thereat by his duly authorized proxy and voting in favor of the sale. This being the state of the case, the plaintiff, when it acquired this stock, got nothing more than Solomon had at that time, and the corporation having sold its properties with the consent and by the affirmative vote of these shares of stock, the holder thereof cannot subsequently treat his own action, or the action of his assignor, as a fraud upon his rights. The court below should have held that the plaintiff was entitled to no recovery because of the eighty-five shares of stock.

Has the plaintiff proved that the Mannington Window Glass Company was indebted to Solomon in the amount claimed by him in the account presented at the time the notes were issued? It would seem from the evidence in this case that there is very little trouble in coming to a conclusion upon this proposition. The amount claimed by Solomon is set up in the record. It is made up of monies which he claims were advanced by him to the company for the construction of its plant, and to pay his expenses while he was engaged in supervising the construction, and in locating the plant. There seems to be no dispute about the correctness of any of the items of this account, except that

86 W. Va.

the defendant Mannington Window Glass Company says that he is not entitled to be reimbursed for his personal expenses amounting to something over two thousand dollars, for the reason that the agreement by which he received the ten thousand dollars of stock was that he was not only to contribute his services in locating the plant and in superintending its construction, but was to pay his own expenses while doing so. Upon the denial of the defendants of the correctness of this account, the plaintiff attempted to prove the same. Solomon testifies that the account is correct in every item. The plaintiff further introduced the defendant Ford as a witness on its behalf and examined him in regard to this account. Instead of supporting the plaintiff's claim that the account is correct, he says that the distinct understanding and agreement was that Solomon was to pay his own expenses, and that the charges against the Mannington Window Glass Company for expenses are not correct. He says further that in addition to paying his expenses the agreement between the promoters was that Solomon was to pay twenty-five hundred dollars in cash for this stock, which he never paid; that all of the promoters were to receive certain shares of stock, and were to use their efforts in financing the company, and in relocating the plant, and agreed to pay their own expenses in these efforts, and to pay certain sums of money, some of them three thousand dollars, some thirty-five hundred dollars, and some twenty-five hundred dollars; and that all of the promoters paid the amounts of money agreed upon except Solomon; and that instead of the company owing him over two thousand dollars for expenses incurred by him, under the agreement he was to bear those expenses himself, and, in addition thereto, owes twenty-five hundred dollars for the ten thousand dollars of stock. The plaintiff also introduced other promoters and they all corroborate Ford in this regard, so that the evidence is overwhelming that Solomon was to pay his own expenses, and in addition twenty-five hundred dollars for the ten thousand dollars of stock received by him, and it is admitted that he has never paid the twenty-five hundred dollars, so that upon this evidence introduced by the plaintiff itself, and it is only contradicted by the one witness Solomon, Solomon's account must be reduced to the extent of something over two thous-

and dollars because of the items which he claims for his personal expenses while relocating and superintending the construction of the plant, and charged with twenty-five hundred dollars which he agreed to pay in addition to his services for the ten thousand dollars of stock, and which he has never paid. In addition to this there is an item of twenty-five hundred dollars charged in Solomon's account which he claims he advanced to the Mannington Window Glass Company. It is not disputed that this is correct, but it is shown that Solomon was given a check for $2510.00 which he collected, and which it is testified by the officers of the Mannington Window Glass Company was to repay this twenty-five hundred dollars advanced by him. There is no denial on his part that this is the case. A check was drawn by himself for $2267,50, payable to J. H. Dyer, agent, which it is testified by the officers of the company was for Solomon's benefit, and with which he has given the company no credit in his account. He does not deny this to be the fact. It will thus be observed that if we deduct from his account the items that he charges for his expenses and which it is conclusively proven he is not entitled to, and charge him with the twenty-five hundred dollars which he was to pay for the stock in addition to contributing his services, and charge him with the two checks above referred to, which it is testified without contradiction upon his part were received by him, the Mannington Window Glass Company did not owe him anything like $4931.50 at the time the notes were delivered to him by Braddock. Braddock accounts for the execution of these notes by stating that he was not advised of these checks which had been drawn at Mannington in Solomon's favor at the time he gave the notes, and upon the insistence of Solomon he checked up the account and found that there were items to that amount which Solomon would be entitled to receive, and gave him the notes representing the same, not knowing that Solomon had received these large advancements. It clearly appears that Solomon was not entitled to any such sum as $4931.50, if indeed he was entitled to receive anything at the time these notes were issued to him. In addition to this, however, it is testified by the other promotors who were put upon the witness stand by the plaintiff that the certificate for five thousand dollars of stock which Solomon

says was issued to him for his services in supervising the plant was surreptitiously procured by him; that he procured this certificate to be issued in blank upon the representation that he had sold that much stock to another party but did not know in whose name it was desired to have the same issued, and after thus securing it in blank filled in his own name. Solomon denies this, but the plaintiff itself proves it by the evidence of all the other parties familiar with the transaction. We are therefore clearly of the opinion that the plaintiff was not entitled to recover anything because of the open account set up and relied upon by it and assigned to it by Solomon, and the court's decree finding that it was entitled to recover something on account thereof, and referring the cause to a commissioner to ascertain the amount, will be reversed.

But the plaintiff says that regardless of whether the defendand Mannington Window Glass Company was indebted to Solomon it is entitled to recover upon the notes set up by it, for the reason that they were received by it in due course for a valuable consideration. If this is true, then the decree finding this amount against the Mannington Window Glass Company in favor of the plaintiff is correct, but the defendants assert that while these notes were executed in the name of the Mannington Window Glass Company by J. N. Braddock, its treasurer, he had no authority to execute the same, and that they do not constitute valid and binding obligations of that company, wherefore plaintiff can recover no more than it can prove the defendant Mannington Window Glass Company owed to Solomon; further, that even though the notes were executed by Braddock with full authority, some if not all of them are not held by the plaintiff in due course, and that as to any part not so held it cannot recover unless the Mannington Window Glass Company was indebted to Solomon in the amount represented by such notes, which we have already found not to be the case.

Upon the question of the authority of Braddock to execute these notes, there would seem to be little ground for contention. In addition to being the treasurer of the company, and in addition to showing that he executed practically all of the commercial paper issued by this company, and it is shown that it issued a great deal of it, it appears that about the time the op-

erations of the company began the promoters, who were at that time all of the stockholders, in a meeting agreed that each of them should attempt to secure money for the purposes of the company, and it was further provided in this agreement that for any money thus secured, or for any money advanced the company by any of the promotors, a note should be issued in the name of the company by Braddock as its treasurer, and Ford and Braddock both testify that subsequently at a directors meeting this agreement was approved by the board of directors, and thus became the action of the coryporation. It is true no minute is produced showing this to the case, but these parties were permitted to testify that such action was taken without objection, and the defendants by not objecting to he evidence offered to prove this fact have waived the right to insist upon it being proved by the best evidens. It appears from the account presented by Solomon that it was made up of monies and materials advanced by him for the company, and this being true Braddock had express authority, according to the evidence, to issue the company's obligations to Solomon therefor. We think the proof of Braddock's authority to execute the notes is clear, and it follows if the plaintiff is the holder of these notes in due course, the defendant Mannington Window Glass Company cannot assert as a defense against the same that it did not owe the debt for which the notes were given.

But is the plaintiff the holder of these notes in due course? The proof is clear that as to the one thousand dollar note it received this from Solomon within a few days after it was executed and delivered to him, and that it paid him value therefor. Its right, therefore, to recover on that note cannot be disputed. The note for $931.50, it appears, was negotiated by Solomon to another party, and it is shown that after it became due it was paid to that other party, Braddock claims with money furnished by him. Solomon claims that the payment was made with money furnished by him, and that when the note was taken up it was returned to him because he had furnished the money to pay it off. The party who held the note after it was due states that Ford paid the same to him. As to how Solomon came into the possession of this note after it was paid off is not quite clear. Whether it was paid off with money furnished by him, and was

returned to him for that reason, or whether it was surreptitiously obtained by him, as contended by Ford and Braddock, can make little difference, for the reason that it is undisputed that it was back in his hands after it was due, and according to his own contention he was the full owner of it after it was due so that whatever may be the fact as between the contentions of Braddock and Ford on the one hand, and Solomon on the other as to its payment, the plaintiff in this case could not be the holder thereof in due course, because it is admitted that it secured this note after it was paid off to the former holder and came back into the hands of Solomon. The plaintiff, therefore, is not entitled to recover on account of this note for $931.50, for the reason that it was not the holder thereof in due course, and the note was not based upon any consideration going from Solomon to the Mannington Window Glass Company. It appears that when three of the one thousand dollar notes which were executed and delivered at the same time with the other one thousand dollar note now held by the plaintiff, and the note for $931.50, became due there were issued six five hundred dollar notes with which they were taken up. When two of these five hundred dollar notes became due there were issued in renewal thereof the two five hundred dollar notes now held by the plaintiff. It appears that Solomon had taken up two of the five hundred dollar notes from the party to whom they had been discounted and secured these two renewals to be issued to him, and it is shown by the evidence that before these two five hundred dollar notes were due they were deposited by Solomon as collateral security at a bank in Mannington, that bank thereby becoming the holder thereof in due course, and without any notice of any infirmity in the paper, and the loan held by this bank having been taken up by the plaintiff it took over the collateral held by the Mannington bank as security for it, and thus stood in the place of the Mannington bank so far as these two notes are concerned. We, therefore, find that the plaintiff is the holder in due course, and was properly allowed to recover on account of these two five hundred dollar notes.

But the defendants contend that whatever may be the right of the plaintiff to recover against the Mannington Window Glass

Company, it has no right to subject to sale the property held by the Marion Window Glass Company in satisfaction of its claim, for the reason that the sale was made in good faith for an adequate consideration, and without any fraud upon the part of any of the parties to it, wherefore the decree should have gone no further than to have adjudged the plaintiff's right to recover against the Mannington Window Glass Company, and should have dismissed the other defendants from the suit. That the property was sold for an adequate price we think is sufficiently shown, but can we say that there was not fraud, so far as the plaintiff was concerned, in the transaction? It must be borne in mind that the defendant Marion Window Glass Company is owned entirely by the defendant John A. Ford, and any acts or fraudulent conduct upon his part which would affect the conveyance to him would likewise affect the conveyance made by him to the Marion Window Glass Company. The facts in regard to the payment of the consideration for the property by Ford are that he was to pay off an issue of $30,000.00 of first mortgage bonds, and then to pay certain specific debts which the Mannington Window Glass Company owed. On investigation it appears that the directors of the Mannington Window Glass Company who were its principal stockholders were endorsers upon the obligations given as evidence of practically all of these debts. At any rate, it appears that they were endorsers for the company to the extent of more than fifty thousand dollars, and in making a sale of the company's property they provided for the purchaser paying every one of these debts upon which anyone of them was liable, to the exclusion of the plaintiff, for whose debt only the Mannington Window Glass Company was responsible. The effect of this arrangement was that the directors and stockholders who had endorsed paper for the company were all relieved of their obligation and the company's property was by them used for that purpose to the prejudice of the plaintiff's rights. It seems to be very well established that the officers and directors of a corporation whose assets are insufficient for the payment of all of its debts cannot apply those assets to the payment of debts for which they are liable to the exclusion of creditors who have no security for their debts. This

is by reason of the confidential relation which officers and directors bear toward the corporate property. They cannot use their positions for their own advantage. They are in a sense trustees holding the corporate property for the benefit of all creditors alike, and any attempt by them to divert this property so as to deprive a creditor of his equitable part thereof, and relieve themselves of liability, will be held to be fraudulent. And this is so independent of any statute forbidding an insolvent debtor to prefer creditors. *Sweeny* v. *Sugar Refining Co.,* 30 W. Va. 443; *Hope* v. *Valley City Salt Co.,* 25 W. Va., 789; 3 Purdy's Beach on Private Corporations, §1216; 3 Cook on Corporations, § 692; 5 Thompson on Corporations, §§ 6190 &c. There is no error, therefore, in the holding of the circuit court that the conveyances by the defendant Mannington Window Glass Company to John A. Ford, and by the defendant Ford to Marion Window Glass Company were fraudulent, so far as the plaintiff is concerned.

The decree of the circuit court of Marion county will be reversed so far as it holds that the plaintiff is entitled to any recovery on account of the note of $931.50, or upon the open account set up and relied upon, or upon the eighty-five shares of stock referred to in the bill, and referring the cause to a commissioner to ascertain the amount of such recovery, and the decree entered here will find that the plaintiff is not entitled to recover thereon, and in all other respects said decree will be affirmed after being modified so as to reduce the amount thereof to $2361.00, being the amount of the one thousand dollar note and the two five hundred dollar notes with their proper interest calculated to the third day of March, 1919, the date of the decree of the lower court, and also so as to provide that any sale of the property in satisfaction of the plaintiff's demand as thus reduced shall be subject to the lien of the deed of trust securing the issue of sixty-five thousand dollars of first mortgage bonds.

*Reversed in part, and modified and affirmed in part.*