# CHARLESTON.

Claude Smith *v.* William Ledsome, *et al.*

Submitted January 22, 1924.   Decided January 29, 1924.

1.   Equity—*Demurrer to Bill Good in Part Should be Overruled.*

   A general demurrer to a bill in equity should be overruled if the bill is good in part.   (p. 433).

2.   Same—*Demurrer to Bill Sufficient on One Ground Should be Overruled.*

   If a bill seeks relief on more than one ground, if any one of the grounds stated be sufficient; a general demurrer thereto should be overruled.   (p. 434).

3.   Wills—*Devise by One Whose Interest Is Subject to Outstanding Life Estate Valid.*

   A will which gives and devises property the title to which is vested in the testatrix by a will of testatrix's ancestor, but which property has not been reduced to possession of the testatrix because of a life estate therein of another created and existing by the ancestor's will, is not void because the possession and enjoyment of the property is necessarily delayed until the life estate is ended. Delay in the possession and enjoyment of the property willed does not defeat the will. (p. 432).

4. SAME—*Transposition of Words Not Permitted, When Will Unequivocal.*

When the words of a will are plain and unequivocal, a transposition will not be allowed which will create a different meaning from that expressed by the words as written. (p. 435).

5. SAME—*Holographic Will Construed as Giving Fee in Certain Property and Life Estate in Other Property.*

A holographic will is as follows: "Spencer, W. Va. February 15, 1917. By the help of God I make this my last will I will to my husband Claude Smith all my *wrights* I have in the will of my mother Susan J. Carper, and all other rights I have in property to be his as long as he lives. Hattie F. Smith (Seal)." Properly construed, the husband, Claude Smith, takes a fee in the property of testatrix which she took under her mother's will; and a life estate in all other property of the testatrix. (p. 435).

Case certified from Circuit Court, Roane County.

Suit by Claude Smith against William Ledsome and others. A demurrer was sustained to plaintiff's bill, and questions were certified.

*Ruling reversed.*

*Wm. S. Ryan* and *Thos. P. Ryan,* for plaintiff.
*Harper & Baker* and *S. P. Bell,* for defendants.

LIVELY, JUDGE:

Having sustained a general demurrer to plaintiff's bill, the circuit court certified his action in so doing for review; and has certified other questions which do not arise upon the demurrer. Under sec. 1 of chap. 135, Code, any question arising upon a challenge to the sufficiency of the pleadings may be certified to this court for its decision. The demurrer challenges the sufficiency of the bill, and the only question proper to be certified is whether the bill states a case for equitable relief.

The bill is for partition of certain lands in the county of Roane, an interest in which is claimed by Claude Smith, the plaintiff, as the devisee of his wife, Hattie F. Smith, nee Hattie F. Carper. The bill also seeks to ascertain by dis-

covery the amount of personal property of which S. V. Carper died seized, plaintiff claiming an interest therein under the will of his wife. S. V. Carper was the father of plaintiff's wife, and died in the year 1922. Plaintiff's wife died in the year 1917, leaving a will under which plaintiff claims both an interest in the estate of Susan J. Carper, his wife's mother; and a life tenancy in his wife's share of the personal estate of S. V. Carper, her father. His claims are based entirely upon his wife's will.

Susan J. Carper died in April, 1912, leaving a will in which she gave her husband, S. V. Carper, a life estate in all her real and personal property. A tract of 200 acres she willed to her seven children, to be divided equally. Hattie F. Smith, one of her daughters, took a one-seventh equal interest in the 200 acres, subject to the life estate of her father, S. V. Carper. By another clause of the will she also gave Hattie F. Smith one-half of the oil and gas royalty in a 46 acre tract; the other half, including the land, being devised to her two sons, Robert and Roy Carper, younger brothers of Hattie F. Smith. This will was duly probated, and there is no controversy over it. A week or so before her death, in 1917, Hattie F. Smith made a will which was duly probated, and the proper construction of which is the principal contention in this case. That will reads as follows:

> "Spencer, W. Va. February 15, 1917.
> "By the help of God I make this my last will I will to my husband Claude Smith all my *wrights* I have in the will of my mother Susan J. Carper. and all other rights I have in property to be his as long as he lives
>                    HATTIE F. SMITH     (Seal)"

S. V. Carper, life tenant of the estate of his wife, Susan J. Carper, died intestate in the year 1922, and a short time after his death plaintiff instituted this suit, claiming, as before stated, that he owned, by virtue of his wife's will, a one-seventh interest in the 200 acre tract of land and one-half of the oil and gas royalty in the 46 acre tract, and seeks to have the same partitioned; that by virtue of his wife's

will he has a life estate in whatever share his wife would, inherit from the personal estate of her father, and not knowing of what that estate consisted he prayed for a discovery thereof from the heirs of S. V. Carper.

It appears that in 1920 S. V. Carper and his living children (Hattie F. Smith being then dead), the devisees of Susan J. Carper, together with their respective wives and husbands, conveyed the surface and possibly some mineral interest in the 200 acre tract to defendant William Ledsome. Plaintiff did not join in this deed.

Under the will of Hattie F. Smith does the plaintiff, Claude Smith, have any interest in the property of Susan J. Carper, willed to his wife by her? If so, what is that interest? This is the controlling question which the circuit judge has certified to this court for decision without having passed upon it himself. It may be conceded that if plaintiff has any estate by reason of his wife's will in the property mentioned in the bill, either a life estate, or in fee, he has the right to maintain a suit for partition. *Duffy* v. *Currence*, 66 W. Va. 253, 257; *Carneal* v. *Lynch*, 91 Va. 114, 20 S. E. 959. Indeed, the right of partition to the owners of an equity of redemption is upheld in *Martin* v. *Martin*, 95 Va. 26, 27 S. E. 810. In order to sustain the demurrer the lower court must have concluded that the bill was multifarious, or that plaintiff had no interest whatever in the estate of Susan J. Carper by virtue of the will of his wife Hattie. Defendants, by counsel, assert that plaintiff is given only a life estate in the property of his wife under the will above quoted, and that because her father, at the time of the making and probate of her will, was yet living and had a life estate in all of the property of Susan J. Carper, the will of Hattie Smith, which gave another life estate therein to plaintiff, was inoperative. In other words, because of the precedent and then existing life estate of the father in the property (which did not terminate until his death in 1922), Hattie Smith could not create a life estate in the same by her will in favor of her husband. To sustain the proposition that the will gives plaintiff only a life estate, defendant's counsel cite *Bartlett* v. *Patton*, 33 W. Va. 71, 10 S. E. 21; *Behrens* v. *Baumann*, 66 W. Va. 56,

66 S. E. 5; *Stout* v. *Clifford,* 70 W. Va. 178, 73 S. E. 316;
*Herring* v. *Williams* (N. C.) 73 S. E. 218; *Mixter* v. *Wood-
cock,* 147 *Mass.* 613; and *Geist* v. *Huffendick,* 272 Ill. 99.
These cases do not sustain the proposition that a life estate
may not be created to take effect after another estate ends.
They all relate to construction of wills and the character of
the estate devised by the various provisions in the various
wills which were considered and construed. The proposition
that the creation of a life estate in property on which there
is a present life estate is void and ineffective, is not considered
in these cases. There can be no question that Hattie Smith
had title to the property devised to her by her mother's will,
and her title became vested therein at her mother's death.
The fact that her mother's will created a life estate in favor
of her father would not prevent her from also devising a life
estate to her husband in that property. It is true the enjoy-
ment thereof by her husband could not become effective until
the death of S. V. Carper. An estate in property may be
made to begin *in futuro.* ''Any interest in or claim to real
estate may be disposed of by deed or will. Any estate may
be made to commence *in futuro,* by deed, in like manner as
by will.'' Sec. 5, chap. 71, Code; *Rust* v. *Coal and Coke Co.,*
92 W. Va. 457. So, whether the estate of plaintiff be that of
a life tenant or in fee, or life tenant in part and fee in part,
he is entitled to maintain his suit for partition; and it fol-
lows that the general demurrer to the bill should have been
overruled. *Kenyon* v. *See,* 94 N. Y. Repts. 563; *Wimple* v.
*Fonda,* 2 Johns (N. Y.) 287. If a bill in chancery is good in
part a general demurrer thereto should be overruled. *Dudley*
v. *Niswander,* 65 W. Va. 461, 64 S. E. 745. The bill does not
charge that Susan Carper had any personal estate which
went into the hands of S. V. Carper; nor does it charge that
he had any of this personal estate of his wife at the time of
his death in 1922. That part of the bill is framed on the
theory that plaintiff, by virtue of his wife's will, is entitled
to participate in the division of the personal estate of S. V.
Carper; and it is on that theory that the bill asks a discovery
of the amount of the estate of S. V. Carper. It will be re-
membered that Hattie Smith inherited nothing from her fath-

er's estate, he having died five years later than her demise. She was a prospective distributee only—she had no interest in her father's estate which she could dispose of by deed or will. Does this make the bill bad? It is well settled that a general demurrer to a bill seeking relief on more than one ground should be overruled if any one of the grounds for relief stated is sufficient in law. *Sperry* v. *Premier Poca-hontas Collieries Co.*, 87 W. Va. 223, 104 S. E. 486; *Ohio Finance Co.* v. *Mannington Window Glass Co.*, 86 W. Va. 322, 103 S. E. 333; *Smith* v. *Peterson,* 71 W. Va. 364, 76 S. E. 804; and *Trough* v. *Trough,* 59 W. Va. 464, 53 S. E. 630. The fact that plaintiff asks for something to which he is not entitled does not make the bill multifarious, and demurrable on that ground. To sustain the objection of multifariousness to a bill on the ground that it contains allegations of separate causes of action against the same parties, two things must concur: First, the different causes of action must be wholly distinct, and next, each ground as stated must be sufficient to sustain the bill. The objection of multifariousness will not be sustained because two distinct claims are asserted in the same bill, one of which is a purely legal demand enforceable only at law. *Strother's Admr.* v. *Strother,* 106 Va. 420. The mere assertion of a right which the courts will not enforce, will not render a bill multifarious. *Town of Appalachia* v. *Mainous,* 121 Va. 666. No general rule can be laid down as to what constitutes multifariousness. *Williams* v. *Maxwell,* 45 W. Va. 305. In considering the objection of multifarious-ness the courts seem to have considered what was convenient in each particular case rather than to have attempted to lay down any absolute and hard rule. *Guano Co.* v. *Heatherly,* 38 W. Va. 417. The claim of multifariousness, on which pos-sibly the lower court sustained the demurrer, is not well taken. That part of the bill which asks for a discovery of the personal estate of S. V. Carper, and charges that plaintiff has an interest therein by virtue of his wife's will, can be treated as surplusage, and wholly disregarded. It has been frequently held that a bill which unites a purely legal de-mand with an equitable demand is not multifarious, because the matter therein contained incorporating the legal demand

may be treated as surplusage or impertinent matter. *Smith* v. *Patton,* 12 W. Va. 41; *Sprinkle* v. *Duty,* 54 W. Va. 562; *Wellsburg* v. *Panhandle Traction Co.,* 56 W. Va. 20; *Morehead* v. *New River Power Co.,* 91 W. Va. 277, 112 S. E. 571. The general demurrer to the bill should have been overruled, and we so answer the question certified.

In certifying the case here the circuit court propounded several questions which go to the merits of the controversy, upon which there has been no direct adjudication by the circuit court. This court is asked to construe, in the first instance, the will of Hattie Smith; and to determine what interest, if any, did plaintiff take in his wife's real estate under the will; what interest, if any, in her personal estate; what interest, if any, did his wife take in the real estate of her mother under her mother's will; what interest, if any, did she take in her mother's personal estate; whether or not plaintiff is entitled to partition as prayed for; what interest plaintiff has in the real estate described in the bill; what interest plaintiff has in the personal property described in the bill; should the demurrer have been sustained; and lastly, can the plaintiff maintain his suit? Shall these questions be answered under the statute authorizing the circuit courts to certify questions arising upon the sufficiency of a summons or return of service or challenge of the sufficiency of a pleading? We do not think this statute was designed to take from the circuit courts their constitutional right and duty to pass upon the merits of cases therein pending. However, both counsel for plaintiff and defendant by their briefs have asked this court to construe the will in controversy. It might be stated, however, at the outset, in response to one of the questions asked by the lower court, that the will of Susan J. Carper gave to Hattie Smith, her daughter, a one-seventh undivided interest in the 200 acre tract of land; and one-half of the oil and gas royalties in the 46 acres mentioned in the will. The only question which has given us any concern in construing the will of Hattie Smith is whether she intended to give to her husband a fee in the property willed to her by her mother; or to give him a life estate only in all her property. It will be observed that she had in mind two classes

of property, namely, "all my wrights I have in the will of my mother Susan J. Carper;" and "all other rights I have in property." As to all of the property which she received by will from her mother she gives to her husband without qualification. The period following the name of her mother is significant. It is true that the sentence following, which deals with the second class of property, does not begin with a capital letter. But the qualification of the phrase "to be his as long as he lives" in that last sentence would apply gramatically to "all other rights I have in property", and qualify it alone. It will not do to transpose this qualification and attach it to the first class of property of which she was making disposition, namely, that property which she received under the will of her mother. What other property she had either in lands or personal estate we do not know. She may have had much or little. Nothing illuminative thereto is alleged in the bill; and there is no answer. Whether she had children surviving her is not clearly stated in the bill; the brief says she had none. There is nothing but the will before us. If there is ambiguity in the paper it is a patent one, and it can be determined only by consideration of the paper itself. The first part of the will, up to the period following the name of Susan J. Carper, gives to her husband a fee in the property willed to her by her mother. We said in *Criner* v. *Geary,* 78 W. Va. 476, that "Where an absolute fee in land is given by will, such estate will not be cut down by a subsequent clause, though in the same paragraph, which also gives to the same devisee the personal estate of the testator 'during the term of her natural life', and then to be divided equally between the testator's heirs, no other provisions of the will indicating a clear intention of the testator to also limit the estate in the land to a life estate therein." The testator in that case gave to his wife "all of my real estate the home farm and all of the *appertences* thereunto belonging I also give and devise to my said wife all of my personal *estates* owned and claimed by me, including horses, *Cattle* and *Hogs* and household and *Kitchen furature* during the term of *hur* natural life, and then to be divided equal between my *heires.*" The clause "during the term of *hur* natural life" was held to apply to

·the personal estate named, which it followed, and not to the
real estate although not even a comma separated the sentence
devising the land and the personal property.  A like holding
was had in the case of *Smith* v. *Schlegel,* 51 W. Va. 246, where
the testator bequeathed to his wife his farm on which he lived
containing 71 acres of land more or less, and also gave to
her his personal estate of every kind to be hers during her
natural life time and to be disposed of by her as she might
deem best for her comfort in life.  The disposition of the
real estate and of the personal estate was contained in the
same sentence, that disposing of the real estate being sepa-
rated from that disposing of the personal estate by a comma.
It was held that the wife took a fee in the land and that the
clause ''to be hers during her natural life time'' related to
the personal estate and did not cut down the fee in the land.
In the will of Hattie Smith the two classes of property which
she had in mind and of which she was making a disposition
are separated by a period.  As was said by Judge POFFEN-
BARGER in *Martin* v. *Martin,* 51 W. Va. 391; where an estate
is conveyed by one part of a will it can not be cut down by
raising a mist of doubt from another part.  ''Where a former
clause is express and particular, no subsequent clause shall
be permitted to enlarge it if the two clauses can stand to-
gether.  When a testator, in the disposal of his property,
overlooks a particular event or matter which, had it occurred
to him, he would have probably guarded against, the court
will not employ or insert the necessary clause for the purpose
of supplying the omission, and, though the inference of in-
tention be more or less strong, yet if not necessary or in-
dubitable, the court will not aid the supposed intention by
adding or supplying words.''  *Creswell* v. *Lawson,* 7 Gill &
J. 227.  And in no case where the words used are plain and
unequivocal is a transposition to be made in order to create
a meaning or construction different from that which they
naturally had as written.  *Graham* v. *Graham,* 23 W. Va. 36.
It may be probable that the testatrix, Hattie Smith, intended
to give her husband a life estate in all her property including
that which was willed to her by her mother and that which
she otherwise owned.  Can we say that she so intended by

necessary implication? "Necessary implication means so strong a probability of intention that an intention contrary to that imputed to the testator can not be supposed." *Graham* v. *Graham,* cited. A clearly expressed intention in one part of a will must not yield to a doubtful or dubious construction in another part. *Bell* v. *Humphreys,* 8 W. Va. 21; *Royfield* v. *Zaines,* 17 Grat. 1. In *Bartlett* v. *Patton,* 33 W. Va. 71, relied upon by defendants, the controversy was whether the widow of John Ryan took an absolute or life estate in the personal estate of the grantor. The second clause of the will gave her the farm and personal property "as long as she *livs*" and directed that when she died the farm should be sold and the proceeds divided among parties named. There was a clearly expressed intention that not only the land but the personal estate should be for life, although there was no provision for distribution of the personal estate after her death. The court held that the chattels being devised for life without any limitations over in remainder, she did not have absolute property in the chattels, except such as were consumed in their use (*quae in usu consumuntur*). Although the chattels were expressly given for life, the defense contended that because there was no limitation over, no disposition made after the end of the life estate, the devisee took absolute title.

Plaintiff, under his wife's will, takes a fee in all of the property which she took under her mother's will; and a life estate in all other property owned by her at the time of her death. For reasons stated the order sustaining the demurrer will be reversed. We so answer the questions certified.

*Ruling reversed.*